IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RAHIM A. MUHAMMAD,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  05-1365 (RMU)** |
| | ) | **ECF** |
| **MICHAEL CHERTOFF, SECRETARY** | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL**

Defendant, Michael Chertoff, Secretary of the Department of Homeland Security, by his

undersigned attorney, the United States Attorney for the District of Columbia, submits this

memorandum of points and authorities in support of his motion to dismiss for failure to state a

claim under Federal Rule of Civil Procedure Rule 12(b)(1) and (6).

The Defendant moves to dismiss the allegations contained in paragraphs 12, 17

and 18 of the complaint because the Plaintiff fails to state a claim and has failed to exhaust his

administrative remedies.  The only timely allegation contained in the complaint is the Plaintiff's

non-selection to the position of Area Security Manager in August of 2003.[1]

---

[1] The Plaintiff only refers to two specific incidents in his complaint – non-selection for the
position of Area Security Manager under announcement number 03992251 and constructive
discharge on August 30, 2004.  *See* Comp. ¶¶ 12 through 18.

## STATEMENT OF THE CASE

### Prior EEO Activity

The Plaintiff engaged in EEO activity between January 2001 and April 2001 and again between August 2001 and January 2002. Compl. ¶ 13, *Plaintiff's Affidavit, pp. 2-3, Exh. 1A; Initial Complainant Contact Worksheet, EEO Counselor's Report, Formal Complaint, and Acceptance Letter, for Agency Case No: 01-NCR-WP-RAM-19, Exhs. 2-5; Settlement Agreement for Agency Case No. GSAAR1220010047, Exh. 7; Declaration of Judy Maltby, Exh. 8.* 2. On January 26, 2001, the Plaintiff contacted the EEO Office and alleged that he was harassed on a continuous basis from May 2000 to January 2001 by his immediate supervisor, Leslyn Erikson, then Chief of the Training Academy. *Exhs. 2-5; and Exh. 8.* He raised 11 incidents of alleged discrimination, consisting of comments and monitoring of his time and attendance. *Id.* Muhammad filed a formal complaint on March 6, 2001. *Id.* The 11 issues were accepted for investigation on April 11, 2001. *Exhs. 5 and 8).* The Plaintiff withdrew his complaint on April 24, 2001 before the investigation. *Withdrawal Letter, Exh. 6 and Exh. 8.* Neither Joseph Trindal nor Dean Hunter was aware of this complaint. *Trindal Affidavit, Exh. 1B, p. 2, Hunter Affidavit, Exh. 1C, p. 2, Exh. 1).*

In September of 2001, the Plaintiff again contacted the EEO Office alleging that his immediate supervisor, Leslyn Erickson, harassed him based on race and religion when she made comments of a racial nature on August 16 and August 21, 2001. *Exhs. 7 and 8.* This complaint was settled in January/February of 2002. *Exh. 7.* Hunter was aware of this complaint but was not listed an alleged discriminating official. *Exh. 1C, p. 2.* Trindal was not aware of this complaint. *Exh. 1B, p. 2.*

**Current Complaint**

4.  With respect to the instant Complaint, the Plaintiff initially contacted the EEO Office

on September 11, 2003, alleging discrimination based on race and reprisal.  *EEO Counselor's*

*Report, Exhibit 1D.*  He raised seven allegations of discrimination:

      a.)  He was denied the opportunity to perform as Acting Chief for the Training Division
          in September of 2003;

      b.)  In September of 2003, he reported that Dean Hunter had a barbeque at his house to
          which he invited only white subordinates and made disparaging racial remarks;

      c.) He was not selected for the position of Area Security Commander, GS-0080-12 under
          Vacancy Announcement No. 03992251;

      d.) On August 5, 2003, Mr. Muhammad was refused a transfer into the job of Physical
          Security Specialist (LESO), GS-0080-12, for which he had been selected under
          Vacancy Announcement No. 03991601;

      e.)  He was not selected for a Physical Security Specialist, GS-080-12 on July 15, 2003
          under Vacancy Announcement No. 03992110;

      f.) On May 12, 2003, he was initially given a GS-11 instead of a GS-12 grade for the
          Physical Security Specialist position for which he was selected; and

      g.)  He was removed from the position of Lieutenant (GS-11) in the Law Enforcement
          Bureau on February 14, 2003 and from the FTO (Field Training Officer) program.

     *Id.*  The Plaintiff received a Notice of Final Interview on October 7, 2003.  *Exh. 1D*.  He

filed a formal complaint on October 9, 2003.  *Exh. 1E.*

     On November 5, 2003, the Agency accepted the following issues for investigation based

on race and reprisal:

      a.) On September 11, 2003, the plaintiff was denied the opportunity to perform his duty
          as Acting Chief for the Training Division;

      b.) On September 9, 2003, he informed management of his knowledge of derogatory
          racial comments, regarding Black members of FPS, made by Dean Hunter at his
          home during a barbecue in which white male subordinates only were invited;

      c.)  On September 8, 2003, he was notified by e-mail that he was not selected for the
          position of Area Security Manager, GS-0080-12, under announcement number
          03992251; and

      d.) On August 5, 2003, he was refused a transfer into the position of Physical Security
          Specialist (LESO), GS-0080-12, in which he was competitively selected under
          announcement number 03991601.  *Exh. 1F*.

     On November 5, 2003, the Agency dismissed the following issues as untimely:

      1.) On July 15, 2003, you were notified by the Human Resources Division that you were not selected for the position of Physical Security Specialist, GS-0080-12, under announcement number 039922110;
2.) On May 12, 2002 (sic), you were denied the grade of GS-12 for the position of Physical Security Specialist under announcement number 03991601; and
3.) On or about February 14, 2003, you were removed from the Law Enforcement Bureau after being approved to the rank of lieutenant on or about January 25, 2003, with the Law Enforcement Bureau.

*Id.*

On April 26, 2004, the Complainant was sent a Notice of Final Action. *Exh. 9.* He requested a hearing on May 3, 2004. *Exh. 10.*

On January 26, 2005, the EEOC issued an Acknowledgement Order. *Exh. 11.* The Acknowledgement Order informed the Plaintiff that he had 30 calendar days from receipt of the Order to identify any claims that the agency has dismissed from the investigative process, and to comment on the appropriateness of each dismissal. *Id.* The acknowledgement order further informed him, "If the complainant fails to oppose in writing the dismissal of a claim within the thirty (30) day comment period, the opportunity to have the dismissal reviewed by the Administrative Judge shall be deemed waived." *Exh. 11.* The Plaintiff did not identify any dismissed claims or comment on them within the 30 day time period and the EEOC did not rule on the dismissal. *Withdrawal of Hearing Request, Exh. 12.*

The Acknowledgement Order also informed the Plaintiff that he could move to amend his complaint to add claims that are like or related to the original complaint. *Exh. 11.* "In order to amend the complaint, the complainant shall submit the motion as early as possible to the Administrative Judge stating the new claim, the date(s) when it occurred, and why it is like or related to the original complaint." *Exh. 11.*

On February 9, 2005, the Plaintiff submitted a document entitled "Complaint" *Exh. 17.* In paragraph 5 of this document, he stated that he "resigned employment due to extreme stress,

disparate treatment, and denial of career advancement opportunities." *Id.* He asserted that he was replaced by a non-African American employee. *Id.* He did not indicate if he was trying to amend his complaint, and if so, what the date of the resignation was and how it was like or related to the accepted issues. *Id.* The EEOC did not rule that the complaint should be amended. *Exh. 12.*

On May 31, 2005, the Complainant withdrew his request for a hearing *Exh. 12.* On June 10, 2005, the EEOC issued an order of dismissal based on the Plaintiff's withdrawal of his complaint *Exh. 13.* On July 29, 2005, the Department of Homeland Security issued a Final Agency Decision. *Exh. 14.*

Plaintiff resigned from FPS on August 30, 2004. *Resignation Letter, Exh. 15.* Although he claimed on his resignation form that he resigned because of "continual disparate treatment", Muhammad failed to contact either the Agency's EEO office or the Merit Systems Protection Board to file a claim about constructive discharge or about the reason that apparently led him to resign. *Exh. 8; Declaration of Joan Slous, Exh. 16.* On July 8, 2005, the Plaintiff filed the instant Complaint, alleging discrimination on an ongoing and continuous basis since January 2001, discriminatory non-selection, and constructive discharge. *Compl. ¶¶ 12-18.* He only cites two specific discriminatory incidents in the instant Complaint – constructive discharge in August of 2004 and non-selection in August of 2003. *Id.* The Complaint lists reprisal and a hostile work environment as the basis for the alleged adverse action. *Id.*

## ARGUMENT

### I.    Standard of Review

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must

construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501

(1975). Where a motion to dismiss, however, presents a dispute over the factual basis for the

Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of

fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix

Consulting, Inc. v. Rep. of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). "The plaintiff bears the

burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence."

Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C.1998).

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

must determine whether the plaintiff has alleged sufficient facts in its complaint to state a cause

of action. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court must accept all well-pleaded

facts as true. Doe v. United States Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985).

"However, the court need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions

cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271,

1276 (D.C. Cir. 1994). If, after reviewing the complaint, the Court finds "the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief," the Court must dismiss

the complaint. Conley, 355 U.S. 45-46. Generally Speaking, the Court should not consider

matters beyond the pleadings without converting the motion for summary judgment. See Fed. R.

Civ. P. 12(b)(6).

Nonetheless, there are important exceptions to this general principle. One such

exception applies here. The Court may properly take judicial notice of court records without

converting a motion to dismiss into a motion for summary judgment. Baker v. Henderson, 150

F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)("in determining whether a complaint fails to state a claim,

the court may. . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); Himmelman v. MCI Communications,104 F. Supp. 2d 1, 3 (D.D.C. 2000)("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.")

Here, although defendants submit exhibits, they all consist of documents from the administrative process (and previously provided to Plaintiff), primarily from the action instituted by Plaintiff before the United States Equal Employment Opportunity Commission ("EEOC"). Therefore, this motion should be reviewed as a motion to dismiss.

**II.    The Plaintiff Failed To Exhaust His Administrative Remedies With Respect to His Continuing Violation and Constructive Discharge Claims.**

A federal employee alleging employment discrimination under Title VII must file a timely administrative claim with the employing agency and exhaust his administrative remedies before filing a civil action in District Court.  See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; Kizas v. Webster, 707 F.2d 524, 544 & n.99 (D.C. Cir. 1983); United Airlines v. Evans, 431 U.S. 553, 555 (1977); Brown v. General Services Administration, 425 U.S. 820, 832-33 (1976); see also Jarrell v. U.S. Postal Service, 753 F. 2d 1088, 1091 (D.C. Cir 1985)(A timely administrative charge is a prerequisite to initiation of a Title VII action in District Court); McKenzie v. Sawyer, 684 F 2d 62, 72 (D.C. Cir 1982)(a crucial feature of the plaintiff's case is a showing that the alleged Title VII charge is timely); Cones v. Shalala, 945 F. Supp. 342, 348 (D.D.C. 1996)(failure to pursue administrative claims bars subsequent federal court action).  Accord Bowden v. U.S., 106 F. 3d 433, 437 (D.C. Cir 1996)(same); Childers v. Slater, 44 F. Supp 2d 8, 16 (D. D.C. 1999)(same).

Pursuant to authority delegated in Title VII, 42 USC §2000e-16(b), the EEOC promulgated regulations governing the administrative process, including a series of time limits for seeking informal adjustments of complaints and filing formal charges. See 29 CFR §1614.101 *et seq*. Specifically, 29 CFR §1614.105(a)(1) states:

> An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action.

Courts have strictly enforced the time deadlines throughout the complaint process under Title VII. Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) ("A plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience."); Bayer v. Department of the Treasury, 956 F.2d 330, 332-33 (D.C. Cir. 1992) (although failure to comply with time limits is not a jurisdictional defect, plaintiff bears the burden of pleading and proving sufficient reasons to excuse noncompliance); *see* Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1994); Carter v. Rubin, 14 F. Supp. 2d 22, 32 (D.D.C. 1998) (holding that federal employees may not file employment discrimination actions outside applicable time deadlines).

The procedural requirements governing a plaintiff's right to bring a Title VII claim in court are not unimportant. "It is part and parcel of the Congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." Kizas, 707 F.2d at 544. "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." Brown, 777 F.2d at 14.

In paragraph 12 of his Complaint, the Plaintiff asserts that the Agency discriminated against him on "an ongoing and continuous basis" since January of 2001. The Plaintiff fails to

set forth the specific discriminatory incidents that comprise his continuous violation claim.

However, any actions that occurred more than 45 days prior to his contact with the EEO Office

in September of 2003, and that were not accepted by the Agency in the administrative process

are untimely.  The timely issues are set forth in the Agency's Acceptance Letter, dated

November 5, 2003*, (Exh. 1F):*  1.) On September 11, 2003, the plaintiff was denied the

opportunity to perform his duty as Acting Chief for the Training Division; 2.) On September 9,

2003, he informed management of his knowledge of derogatory racial comments, regarding

Black members of FPS, made by Dean Hunter at his home during a barbecue in which white

male subordinates only were invited;  3.)  On September 8, 2003, he was notified by e-mail that

he was not selected for the position of Area Security Manager, GS-0080-12, under

announcement number 03992251; and 4.) On August 5, 2003, he was refused a transfer into the

position of Physical Security Specialist (LESO), GS-0080-12, in which he was competitively

selected under announcement number 03991601.  Although the Plaintiff had an opportunity at

the EEOC hearing stage to object to the Agency's partial dismissal of several issues *(see Exh.*

*11*), he failed to do so.  *(Exhs. 12 and 13).*  Instead, he withdrew his complaint.  *Id.*

The Plaintiff cannot include untimely discrete employment actions in his complaint

merely by alleging a continuous violation.  *See, e.g.,* National Railroad Passenger Corp. v.

Morgan, 536 U.S. 101, 122 S. Ct 2061 (2002); Coleman v. Potomac Electric Power Company,

310 F. Supp 2d 154, 159-160 (D.D.C. 2004); Pleasants v. Allbaugh, 2002 WL 31520105 (D.D.C.

2002).  Accordingly, all issues other than the ones adjudicated during the administrative process

should be dismissed for failure to exhaust.

The Plaintiff attempts to add a constructive discharge claim to the instant Complaint.

*Compl. ¶¶ 17 and 18.*  However, he never filed a proper complaint with the EEO Office or a

mixed case appeal with the MSPB, as required by 29 CFR §1614.302.  While the Plaintiff may have attempted to amend his complaint with the EEOC on February 9, 2005 (*Exh. 17),* this filing was well beyond the 45 day time limit.  He resigned on August 30, 2004 but did not seek to file a complaint with the EEOC until February 9, 2005.  See, e.g., Czekalski v. Secretary of Transportation, 2005 WL 975679 (D.D.C. 2005 slip op.)(the court found that the Plaintiff failed to exhaust her administrative remedies with respect to her constructive discharge claim so that the Defendant could properly and fully investigate); Johnson v. Ashcroft, 2005 WL 2064095, n 6 (D.D.C. 2005)(stating that a constructive discharge is a discrete action which should trigger timely EEO contact).  During EEO counseling, the Plaintiff was informed that his complaint would be limited to matters raised in pre-complaint counseling. (See *Memorandum for the Record, Subject:  Matter Raised at Counseling, signed by Plaintiff on 10-7-2003, Exh. 1D).*  He was also informed of the 45 day time limit for contacting the EEO Office Id..

Regardless, the EEOC regulations do not permit an amendment for constructive discharge. To exhaust a claim of constructive discharge, a complainant is required to file either a complaint with the EEO Office within 45 days of his resignation or an appeal with the MSPB within 30 days.  29 CFR §1614.302(b).  In neither case, would he be entitled to an EEOC hearing on the claim.  29 CFR §1614.302 (d)(1).  The Plaintiff was informed about the processing of mixed case complaints and appeals during EEO counseling.  (*Exh. 1D.)*

Moreover, the amendment process applies only to claims that are like or related to the original complaint.  See 29 CFR §1614.106(d).  The Plaintiff cannot make any showing that the alleged constructive discharge is like or related to the original complaint.  The last alleged discriminatory incident in his original complaint occurred on September 11, 2003.  *(Exh. 1F).* The Plaintiff resigned almost a year later on August 30, 2004.  *(Exh. 15).*  To show causation, the

plaintiff must leave his employment within a reasonable time after suffering an act of discrimination.  See, e.g., Johnson v. Ashcroft, 2005 WL 2064095 (D. D. C. 2005)(slip op.)(plaintiff who resigned a year after the last act of discrimination could not claim constructive discharge); Landrau-Romero v. Banco Popular de Puerto Rico, 212 F. 3d 607, 613 (1st Cir 2000)(resignation seven months after alleged discriminatory acts too long to claim constructive discharge); Jett v. Dallas Indep. Sch. Dist, 798 F 2d 748, 756 (5th Cir 1986)(six months too long).

Here, because Plaintiff did not exhaust his claims of constructive discharge and continuing violation, they must be dismissed, and, the Plaintiff is not entitled to recover for these claims.  *See* Bayer, 956 F.2d at 332; see also Anyaibe v. Gilbert Security Service, Inc., Civil Action No. 94-2377, 1995 WL 322452, *5 (D.D.C. May 18, 1995).

### III.  The Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.

The allegations set forth in paragraphs 12, 17, and 18 of the complaint are too vague and conclusory and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  In the section entitled "Reprisal", paragraph 12, the Plaintiff alleges that he was subjected to ongoing and continuous reprisal since January 2001.  The subsequent paragraphs, 13-16, address one non-selection in August of 2003.  To the extent that the allegation of ongoing and continuous reprisal includes any other alleged discriminatory acts, it is too vague to state a claim upon which relief can be granted.  In the section entitled, "Constructive Discharge," the plaintiff incorporates paragraphs 1-12 and refers to "discriminatory acts and omissions that were very offensive, pervasive, and caused the creation of a hostile work environment."  *See Compl. ¶¶ 17 and 18.* The only act or omission contained in the remainder of the complaint is non-selection in August of 2003.  To the extent that the allegation of constructive discharge involves any other acts or omissions, it is too vague and conclusory to state a claim.  See Fed. R. Civ. P. 8(a) and (f); and

<u>United States v. Dolan</u>, 452 F 2d 1078, 1079 (3rd Cir 1971)(at some point, however, a complaint

may be so vague, that despite a liberal reading, it must be dismissed for failure to state a claim

upon which relief can be granted.")  In this matter, there is no notice.  It would be unfair to

expect the Agency to attempt to defend itself based on such conclusory allegations.

**CONCLUSION**

For all of the foregoing reasons, the complaint should be dismissed, or, in the alternative,

summary judgment should be entered in favor of Defendant.

Respectfully submitted,

Dated:  March 15, 2006.

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th St., NW
Washington, DC 20530
202/305-4851

*Of Counsel:*
Katharine Johnson
Office of the Principal Legal Advisor
Immigration and Customs Enforcement
Department of Homeland Security
425 I Street, N.W., Room 6100
Washington, D.C. 20536

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2006, I caused the foregoing *Defendant's Motion for Partial Dismissal* to be served on plaintiff's counsel, postage prepaid, addressed as follows as well as via the Court's ECF system:

**Veronica G. Awkard, Esq.**
**6490 Landover Road, Suite A**
**Landover, Maryland  20785**


_____s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 305-4851
(202) 514-8780 (facsimile)