## AFFIDAVIT

Washington

District of Columbia

I, Rahim A. Muhammad, Physical Security Specialist, GS-12, Training Division, National Capital Region Federal Protective Service ("NCR FPS"), Department of Homeland Security, Washington, DC, hereby affirm that this statement is the truth, the whole truth and nothing but the truth.

The Investigator has informed me that the following claims have been accepted for investigation:

> Whether Complainant was subjected to a pattern of discrimination when he was subjected to disparate treatment based on his race (Black) and in reprisal for prior EEO activity when the following incidents occurred:

> a. On September 11, 2003, Complainant was denied the opportunity to perform his duty as Acting Chief for the Training Division.

> b. On September 9, 2003, Complainant informed management of his knowledge of derogatory racial comments, regarding Black members of FPS, made by Dean Hunter at his home during a social event in which white male subordinates, only, were present.

Page 1 of 8                                                                 Initials ＿＿

    c. On September 8, 2003, Complainant was notified by email that he was not selected for the position of Area Security Manager, GS-0080-12, under vacancy announcement number 03992251.

    d. On August 5, 2003, Complainant was refused a transfer into the position of Physical Security Specialist (LESO), GS-0080-12, in which he was competitively selected under vacancy announcement number 03991601.

My race is African American. I filed a previous EEO complaint near the end of 2001. My immediate supervisor is Commander Elliott Grollman, Training and Special Operations Commander, NCR FPS. My second level supervisor is Mr. Dean Hunter, Deputy Director, NCR FPS. Mr. Joseph Trindal, Director NCR, FPS, is my third level supervisor. I have worked in my current position for six years and have worked with FPS and Federal Government for seven years. My work site is located at the Southeast Federal Center, First and M Streets, SE, Washington, DC. At the time of the issues raised in my complaint, I worked under the direct supervision of Mr. Anthony Surbeck, Acting Chief, Training Division, NCR FPS. Mr. Hunter was my second level supervisor.

I filed a prior informal EEO complaint because my former supervisor, Leslyn Erickson, Chief, Training Division, appointed a less qualified White Instructor over me. My informal complaint was referred for mediation. Mr. Don Waldon, District Director, Federal Triangle and Central District, served as the Agency's representative during mediation. The informal complaint was settled and, as a result, from February 2002 to

February 2003, I was removed from a hostile environment to serve a one-year detail to the NCR FPS Law Enforcement Bureau, working under the direct supervision of Mr. Waldon.

While Mr. Hunter is the primary individual responsible for discriminating against me, four other Agency officials were involved in the matters under investigation, i.e., Mr. Joseph Trindal, FPS Director, Mr. Waldon, Director Director, Mr. Paul Constable, District Director, and Mr. Earl Boyd, District Director. Mr. Hunter was aware of my prior EEO complaint and knew that I was on detail to the Law Enforcement Bureau as the result of a negotiated settlement of the complaint. I am not sure if Mr. Trindal was aware of my prior complaint and settlement, but I believe that Mr. Hunter would have given him background information concerning the reason I served the one-year detail to another office. Mr. Constable probably knew of my complaint because he is a District Director and I believe that it was common knowledge among NCR FPS management that I had filed a complaint. Mr. Waldon was aware of the complaint because he was involved in settling the matter. Mr. Boyd knew of my complaint as Leslyn Erickson worked for him, and he opposition from Mr. Hunter regarding a favorable temporary appointment recommendation he submitted on my behalf.

Prior to my promotion to the GS-12 level on July 27, 2003, Mr. Surbeck alternately had appointed GS-11 Instructors in the Training Academy to act as acting Chief Training in his absence. However, after my promotion, Mr. Surbeck consistently appointed me to serve as Acting Chief because I was senior to other Instructors in grade and tenure.

On September 11, 2003, I learned that when Mr. Surbeck was removed as Acting Chief of the Training Division, Mr. Harold Miller, a White Instructor who was junior in grade and tenure, was appointed as Acting Chief. I became aware of the appointment when the Chief of Human Resources, Mr. Earl Mahmoud, asked me to leave a supervisory staff meeting because I was not the Acting Chief, Training Division. When I questioned Mr. Surbeck about the decision to appoint Mr. Miller as Acting Chief, he said Dean Hunter had made the decision. I attempted to speak with Mr. Hunter, but he was unavailable. I spoke with Mr. Trindal who said he had decided to appoint Mr. Miller. I informed Mr. Trindal that his decision was inappropriate because I was senior to Mr. Miller in grade and tenure. Mr. Trindal offered no explanation for his decision and indicated that he had to attend a meeting. On September 12, 2003, Mr. Trindal issued a memo appointing my current supervisor, Mr. Elliott Grollman, as Training and Special Operations Commander for the Training Academy. I believe that management went outside of the Training Academy to realign and appoint an Area Security Commander to avoid appointing me to the newly named position.

I had heard rumors concerning a social event allegedly given by Mr. Hunter and attended by several White subordinate employees. No Black employees were in attendance. Mr. Hunter allegedly used the racial epitaphs "nigger" etc. and allegedly commented that there were more Blacks employed at FPS than Whites and that the disparity needed to be reduced. I decided to bring this matter to Mr. Trindal's attention because I was concerned about hiring and promotion decisions made by Mr. Hunter,

Page 4 of 8                                                                                   Initials

including his non-selection of me for the Area Security Manager position at issue in this complaint. I expected Mr. Trindal to look into the matter and to take appropriate action if the allegations were found to be true. However, Mr. Trindal told me to take the matter directly to Mr. Hunter. I spoke with Mr. Hunter on the same day concerning the rumors. Mr. Hunter denied having such a social event at his home and making the statements. After filing the EEO complaint, I learned that the FPS Office of Internal Affairs is investigating the incident, and was asked to submit a statement to the Internal Affairs representative.

I learned of the alleged social event through a co-worker, Mr. Ronald Dixon, who said that Mr. Martin Koski, a White co-worker, told him that he had attended an event and had heard and witnessed the statements made by Mr. Hunter.

On September 8, 2003, I learned that I was not selected for the position of Supervisory Physical Security Specialist (Area Security Manager), GS-0080-12, advertised under vacancy announcement number 03992251. Nine individuals were selected under the vacancy announcement. Mr. Hunter informed me that I missed the cutoff score by one point, but I believe I should have ranked higher than at least four or five of the applicants who were rated ahead of me. I have more experience and seniority than several of the selectees. Further, I trained these individuals in law enforcement.

In response to Mr. Hunter's claims that I lack experience in physical security and law Enforcement and that these factors adversely affected my score, I would offer the

following background information in my defense. I am experienced and trained in physical security and law enforcement areas. During my one-year detail to the Law Enforcement Bureau as a Special Operations Officer (with duties comparable to that of Lieutenant), I supervised a counter assault team, advised Area Commanders on counter measures for the security of a federal courthouse during the trial of an alleged terrorist, and advised Watch Commanders on contingency matters and civil disturbance policy as they related to tactical plans and techniques. I also advised Watch Commanders on policies regarding implementation of tactical plans. I have attended the Physical Security Academy and have been certified in that area. Further, as a senior Instructor, I have trained employees, including some of the applicants selected over me, in areas of law enforcement. I am well qualified for the position and believe that Mr. Hunter manipulated the scores to ensure that I did not score high enough to be selected.

Mr. Hunter informed me that I would be in line for the next position as Area Security Commander if it becomes available, and that had there been one more slot, I would have been selected. However, several months prior to our discussion when another position became available (at the Ronald Regan Building), Mr. Hunter laterally transferred into the position a White individual from outside the organization, although I was the only person on the personnel selection roster as eligible, and rated at the grade for which it was announced.

I originally alleged that on August 5, 2003, based on my race and prior EEO activity, I was denied a transfer to the position of Physical Security Specialist, GS-0080-12, even

though I had been competitively selected under vacancy announcement number 03991601. Mr. Hunter was the selecting official for this position. While I question Mr. Hunter's motivation for most decisions that concern me, I accepted management's explanation that my services are needed in the Training Academy until my position is backfilled. Therefore, I am not seeking, as of today, transfer to the Physical Security Specialist position.

Based on Mr. Hunter's actions toward me, and comments he allegedly made about Black FPS employees, I have reason to believe that my race has been a factor in every employment decision he has made concerning my efforts to advance my career under his supervision. For example, in addition to the allegations accepted for investigation in the EEO complaint, Mr. Hunter attempted to select me at the GS-11 level when I applied and qualified for the position of Physical Security Specialist, GS-000-12, advertised under vacancy announcement number 03991601. Even though Personnel clearly qualified me for the GS-12 level, AND Mr. Hunter was Dir. of Panel that interviewed me, ~~and interviewed before a panel consisting of Himself and the Director as a panel member~~, Mr. Hunter attempted to select me as a GS-11. ~~As~~ I also qualified for the position of Physical Security Specialist at the GS-12 level, under vacancy announcement number 03992110, at the Ronald Regan Building and was the only applicant who was certified as qualified. Mr. Constable was the selecting official, but Mr. Hunter took the Certificate of Eligibles from him. Rather than select me for the position, Mr. Hunter laterally selected for the position a White male at a grade higher than announced, and to my knowledge, was not on the personnel certificate of Eligibles.

Page 7 of 8                                                                                               Initials

In order to resolve the complaint, I am seeking to be retroactively placed in the position of Area Security Manager. I will consult with Counsel and update the record at a later date concerning compensatory and or punitive damages, or other remedies to which I may be entitled.

I have read the foregoing statement consisting of __8__ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __2__ day of __FEBRUARY__, 2004.

_____
Signature

# PRIVACY ACT NOTICE TO COMPLAINANT
# FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by investigation to resolve your equal employment opportunity discrimination complaint. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve your equal employment opportunity discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to U.S. General Services Administration activities, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_[signature]_  
Signature of Interviewer

_[signature]_  
Signature of Complainant

December 19, 2003  
Date

Washington DC  
Place

REBUTTAL TO JOSEPH TRINDAL'S AFFIDAVIT

1. On page 2 of his affidavit, Mr. Trindal admits that his initial decision was to appoint the most senior training instructor at the Training Academy and he was advised (by an unnamed person) that Mr. Harold Miller, Senior Training Instructor, had seniority over the other instructors, including Complainant. However, I was the Senior Instructor in tenure and grade at the time. Mr. Miller was a GS-11 and I was a GS-12. Also, I had trained Mr. Miller when he came into the Academy.

2. Page 2, Mr. Trindal admits that he consulted with Mr. Hunter as to his thoughts and with his concurrence, advised Mr. Hunter to notify Mr. Miller that he (Mr. Miller) would assume the responsibilities as Acting Director, Regional Training Academy. However, Mr. Trindal and Mr. Hunter both set on the panel and interviewed me for my GS -12. Therefore, they both knew that I was senior to Mr. Miller since Mr. Miller was a GS-11.

3. Pages 2, Mr. Trindal admits that shortly after Mr. Hunter informed Mr. Miller of his new appointment as Acting Director, Regional Training Academy, Mr. Hunter advised Mr. Trindal that Mr. Miller was ineligible for the acting position as he was a GS-11 and the Acting Director billet was a GS-13. All other instructors, to include the Complainant, assigned to the Regional Training Academy were at like or lesser grade than Mr. Miller. First, when Mr. Surbeck, former Acting Director was appointed to the acting position, he was a GS-12 and later was promoted to a GS-13. Second, all other instructors assigned to the Regional Training Academy were not at like or lesser grade than Mr. Miller because I was a GS-12 Senior Instructor. I believe the selection of Mr. Miller was called an error because I asked why Mr. Miller was appointed as the Acting Director over me since I was the Senior Instructor.

4. On page 4, Mr. Trindal states that he again asked me if I wanted him to look into this matter (a rumor he, the Complainant, had heard in which it was alleged that Mr. Hunter has hosted a barbeque at his residence in which several white FPS employees were in attendance. The Complainant further related to me that the rumor further alleged that Mr. Hunter had made the statement at this barbeque that the FPS has more Black than White employees and something should be done to correct the disparity) to which he, the Complainant, insisted that he wanted to take it up with Mr. Hunter himself. I disagree with this statement because Mr. Trindal told me that I should bring this matter to Mr. Hunter's attention and he, Mr. Trindal, knew that I was visiting the Deputy Director's office to schedule an appointment to discuss the rumor.

5. On page 5, Mr. Trindal states that he was the selecting official for the Area Security Manager position, GS-0080 12/13. However, according to each panel member's affidavit, they were under the impression that Mr. Hunter was the selecting official.

I have carefully reviewed the above and swear that it is true and correct under penalty of perjury.   _[signature]_

## REBUTTAL TO DEAN HUNTER'S AFFIDAVIT

1. On page 2 of his affidavit, Mr. Hunter admits that he was a third level supervisor over me. The rating and ranking panel were supposed to be rating us as having supervised us directly.

2. Page 2, Mr. Hunter states that he was not aware of the details of my original EEO complaint. However, I went to him even before filing the complaint and described the circumstances in some detail, hoping to get assistance from him. However, he did not assist me.

3. Pages 2-3, Mr. Hunter admits that he chose Mr. Miller (Caucasian) to serve as Acting Director of Training. Mr. Miller was a GS-11 at the time and I was a GS-12, who had been involved in training Mr. Miller and had more instructor experience than Mr. Miller. My last rating of record was "Outstanding" so there was no reason to have selected Miller over me for this Acting position. Moreover, Mr. Hunter admits that after I challenged the placement of Mr. Miller in the position, they put the Training Division and two other sections under Mr. Grollman (Caucasian). I should have the been the person placed in the Acting Director position, but Mr. Hunter was avoiding placing me in that position.

4. Mr. Hunter admits that he asked Mr. Mahmoud why was I in attendance at the meeting. I was not aware that Mr. Miller was named Acting Director of Training and assumed that I would be acting that day, because I had been attending such meetings in the past as Acting Chief of Training.

5. On page 4, Mr. Hunter describes the conversation that he had with me over why I was not selected for an Area Commander position. I disagreed with him that I lacked significant experience as a law enforcement supervisor or that I lacked significant experience in the FPS physical security program. I explained to him the extensive experience that I had in both areas, and I questioned how individuals that I had trained were selected above me and that some of these individuals had less experience in these areas than I had.

6. He did tell me that I had a strong future and that if they had one more slot I would have been selected. However, when two slots for Area Commanders opened up thereafter, they transferred in Caucasian males to fill the positions.

7. Contrary to his claim that he told me that he was both a panel member and the selecting official for this position, what he actually told me at the time was that Director Trindal was the selecting official for this position. I can't explain why he falsely tell me that Mr. Trindal was the selecting official if he was indeed the selecting official.

8. He did tell me that he was impressed with the interview that I participated in when I got my GS-12 promotion some 4 months earlier.

9. I did question him about being told that he had a barbecue at his home and that inappropriate racial remarks were exchanged at the barbecue. He assured me that he had no such barbecue at his home and told me that he had invited blacks to his home in the past.

10. Mr. Hunter reiterates at p. 5 and 6 of his affidavit that he was both selecting official and panel member for these selections. However, I notice that Mr. Trindal has signed off on the merit certificate of eligibles as the selecting official. It is my understanding that the selecting official is supposed to sign this form on the line where it asks for "Selecting Official's Signature".

11. I am unable to say whether the process that Mr. Hunter describes at pages 6-7 of his affidavit was followed, but it seems highly irregular that he inserted himself as a panel member when Chief Boyd did not rate all the applicants. I also do not believe that he did not know the scores of the other panelists at the time he rated the applicants. By his own admission he was the one who opened the panelists scoring packets. He could not have known that Chief Boyd had not rated all the applicants unless he had already opened the packets.

12. I believe that it is significant that Mr. Hunter denied to me that he was the selecting official when I first confronted him on September 8, 2003 and never once let on that he was one of the panel members in the selection process. At that time he told me that Mr. Trindal was the selecting official. He never said anything to me during that discussion that even hinted that he was involved in any way. I was still of the impression that Chief Boyd, Waldon and Constable were the panel members and that Trindal was the selecting official. However, I now know that Hunter was concealing his very major role as panel member and selecting official.

13. I also believe that Mr. Trindal signed off the selection certificate as selecting official in order to conceal Mr. Hunter's significant involvement in this selection process.
At the time of this selection, most of us had heard about the Hunter event at his home and the racial remarks made there and the Agency was attempting to downplay his involvement in the selection process because there were several of us who felt the selections were being made for racially discriminatory reasons, and not based on KSA's for the position.

    I have carefully reviewed the above and swear that it is true and correct under penalty of perjury.

                                                      [signature]