# **AFFIDAVIT**

Washington

District of Columbia

I, Joseph Trindal, Director, National Capital Region, Federal Protective Service ("NCR, FPS"), Department of Homeland Security ("DHS"), Washington, DC, hereby affirm that this statement is the truth, the whole truth and nothing but the truth.

The Investigator has informed me that the following claims have been accepted for investigation:

> Whether Complainant was subjected to a pattern of discrimination when he was allegedly subjected to disparate treatment based on his race (Black) and in reprisal for prior EEO activity when the following incidents occurred:
>
> a. On September 11, 2003, Complainant was denied the opportunity to perform his duty as Acting Chief for the Training Division.
>
> b. On September 9, 2003, Complainant informed management of his knowledge of derogatory racial comments, regarding Black members of FPS, made by Dean Hunter at his home during a barbeque in which white male subordinates, only, were invited.
>
> c. On September 8, 2003, Complainant was notified by email that he was not selected for the position of Area Security Manager, GS-0080-12, under announcement number 03992251.
>
> d. On August 5, 2003, Complainant was refused a transfer into the position of Physical Security Specialist (LESO), GS-0080-12, in which he was competitively selected under announcement number 03991601.

I have not previously been the subject of an EEO investigation while employed with the FPS. I have held my current position since March 2003. Prior to that, I worked for the U. S. Marshal Service for about 20 years. My first level supervisor is Wendell Shingler, Director, FPS, DHS. My office is location at the Southeast Federal Center, 3rd and M Streets, SE, Washington, DC.

Initials

intentions. I again asked the Complainant if he wanted me to look into this matter, to which he insisted that he wanted to take it up with Mr. Hunter himself. I advised the Complainant that I understood his position and offered to help in any way. Within a matter of minutes, Mr. Hunter returned to the office at which time he (Mr. Hunter) and the Complainant retired to Mr. Hunter's office behind closed doors. It was my intention to take the matter up with Mr. Hunter regardless of the Complainant's desires as a manager's responsibility to investigate and resolve allegations of disparate treatment and possible misconduct supercede the desires of the employees. Immediately after Complainant and Mr. Hunter spoke, Mr. Hunter came into my office and advised me of the Complainant's statements. Mr. Hunter's verbal report to me of the Complainant's statements were substantively consistent with that which the Complainant had reported to me earlier. Mr. Hunter further emphatically denied the occurrence of the barbeque as well as alleged statements at any time. I informed Mr. Hunter that we, as management are duty bound to have the allegation Complainant made reported to FPS Office of Internal Affairs ("OIA"). Subsequently, by the close of business that day, Mr. Hunter had reported the Complainant's allegation regarding the barbeque statements to OIA. To the best of my knowledge, this matter is currently under investigation by Chief Kevin Page, FPS OIA. Mr. Page will issue a Report of Investigation (ROI) once the investigation is concluded.

I regard the Complainant's allegation as a serious matter. The appropriate procedure to handle allegations of this nature is cause the matter to be referred OIA. OIA is procedurally required to submit certain allegations of employee misconduct to the Office

Page 4 of 7                                                                 Initials

of the Inspector General, U.S. Department of Homeland Security (DHS/OIG). These procedures are strictly adhered to in FPS NCR to ensure fair, through and objective investigations. I have not received any complaints or information of a similar nature regarding Mr. Hunter.

I was the selecting official for the position of Supervisory Physical Security Specialist (Area Security Manager), GS-0800-12/13 advertised under vacancy announcement number 03992251. Based on my recollection, I did not select the panel members or provide any direction or instructions to the panel members concerning how to rate and rank applicants. Originally, the panel consisted of Earl Boyd, Director, NCR FPS Eastern District, Don Waldon, Director, NCR FPS Central District, and Paul Constable, Director, NCR FPS Virginia District. Each panel member was charged with the task of individually rating and ranking each applicant for the position. Panel members had instructions to submit their ratings and rankings to my office. Once all panel members submitted their rating of applicants, it was discovered that Mr. Boyd had rated only one or two of the 21 applicants, based on his interpretation of the instructions. Rather than sending the applications back to Mr. Boyd with clearer instructions, due to time constraints, I instructed Mr. Dean to rate the applicants. Mr. Hunter submitted to me a listing of the ranking applicants in accordance with their aggregated scores. There were nine (9) vacancies that needed to be filled from this list of applicants and I selected the top nine applicants for the position. I based by decision solely on the applicant composite rankings provided by Mr. Waldon, Mr. Constable and Mr. Hunter and submitted to me by Mr. Hunter. Prior to the selection at issue in this complaint, I do not recall serving as a

Page 5 of 7                                                                                     Initials

than furthering the FPS mission. For example, without being asked, the Complainant put together a proposal for a Marine Patrol Unit for the NCR FPS, including making contacts with potential vendors of equipment, training and supplies. The Complainant enrolled in boat handler training, and made it clear to me that he expected to be appointed to head up the unit. I informed Complainant that I would not guarantee such a pre-selection. The Complainant replied that he understood that, but he was very interested in leading the unit, once formed.

I have read the foregoing statement consisting of seven (7) pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of February, 2004.

_Joseph W. Trindal_
Signature

## PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to GSA/DHS activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of GSA/DHS employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____    _____
Signature of Interviewer            Signature of Witness

12/30/03                            Washington DC
_____    _____
Date                                Place

# **AFFIDAVIT**

Washington

District of Columbia

I, Joseph Trindal, Director, National Capital Region, Federal Protective Service ("NCR, FPS"), Department of Homeland Security ("DHS"), Washington, DC, hereby affirm that this statement is the truth, the whole truth and nothing but the truth.

The Investigator has informed me that the following claims have been accepted for investigation:

> Whether Complainant was subjected to a pattern of discrimination when he was allegedly subjected to disparate treatment based on his race (Black) and in reprisal for prior EEO activity when the following incidents occurred:
>
> a. On September 11, 2003, Complainant was denied the opportunity to perform his duty as Acting Chief for the Training Division.
>
> b. On September 9, 2003, Complainant informed management of his knowledge of derogatory racial comments, regarding Black members of FPS, made by Dean Hunter at his home during a barbeque in which white male subordinates, only, were invited.
>
> c. On September 8, 2003, Complainant was notified by email that he was not selected for the position of Area Security Manager, GS-0080-12, under announcement number 03992251.
>
> d. On August 5, 2003, Complainant was refused a transfer into the position of Physical Security Specialist (LESO), GS-0080-12, in which he was competitively selected under announcement number 03991601.

I have not previously been the subject of an EEO investigation while employed with the FPS. I have held my current position since March 2003. Prior to that, I worked for the U. S. Marshal Service for about 20 years. My first level supervisor is Wendell Shingler, Director, FPS, DHS. My office is location at the Southeast Federal Center, 3rd and M Streets, SE, Washington, DC.

Page 1 of 7                                                                                       Initials

At the time of the allegations raised in the instant complaint, I had no knowledge of Complainant's prior EEO activity. At no time have I ever taken into consideration any employee's legal and absolute right to challenge, within statutory and regulatory parameters, any management decision or practice.

When the Complainant's former supervisor, Anthony Surbeck, Acting Director (referred in the instant complaint as "acting chief"), Regional Training Academy, was removed from his position in August 2003, my initial decision was to appoint the most senior training instructor at the Training Academy. Within an hour or two of the removal of Mr. Surbeck, I was advised that Mr. Harold Miller, Senior Training Instructor, had seniority over the other instructors, including the Complainant. I then consulted with with the Deputy Director, Mr. Dean Hunter, as to my thoughts and with his concurrence, advised him (Mr. Hunter) to notify Mr. Miller that he (Mr. Miller) would assume the responsibilities as Acting Director, Regional Training Academy. To the best of my knowledge, Mr. Hunter complied with these instructions. Shortly thereafter, within hours, Mr. Hunter advised me that Mr. Miller was ineligible for the acting position as he was a GS-11 and the Acting Director billet was a GS-13. All other instructors, to include the Complainant, assigned to the Regional Training Academy were at like or lesser grade than Mr. Miller. In further consultation with Mr. Hunter, we decided to temporarily assign then Captain Elliott Grollman as Acting Director for the Regional Training Academy. I believe that Captain Grollman was at that time selected for an Area Commander (Lt. Col.) position pending promotion. In order to avoid confusion and to assume personal responsibility for the error in temporary selection, I personally called

Mr. Miller at which time I advised Mr. Miller that he would not perform as Acting Director. All of these events occurred within about four to six hours on the same calendar day. The Request for Personnel Action form (SF-52) was prepared within a few days after these events, thereby formally making the temporary appointment of Capt. Grollman to the position of Acting Director for the Regional Training Academy. My recollection of the date(s) can neither support nor refute the Complainant's assertion of the date for this event.

Further, the reorganization of NCR FPS was underway, and I was already considering initiating removal of the Regional Training Academy from under the Support Services Branch due of performance problems with the previous Acting Director.

On a date and time, which I do not recall the Complainant visited the Office of Regional Director asking for Mr. Hunter. Mr. Hunter was momentarily away from his office. I asked the Complainant if I could help him. The Complainant initially stated that it was a matter, which he wanted to discuss personally with Mr. Hunter. I reiterated my offer to assist or at least listen, at which time the Complainant advised me that he had come to discuss with Mr. Hunter a rumor he had heard in which it was alleged that Mr. Hunter had hosted a barbeque at his residence in which several white FPS employees were in attendance. The Complainant further related to me that the rumor further alleged that Mr. Hunter had made the statement at this barbeque that the FPS has more Black than White employees, and something should be done to correct the disparity. The Complainant added that he coupled this rumor with his perception that a number of vacant positions for which he had applied and had not been selected as questionable of Mr. Hunter's

intentions. I again asked the Complainant if he wanted me to look into this matter, to which he insisted that he wanted to take it up with Mr. Hunter himself. I advised the Complainant that I understood his position and offered to help in any way. Within a matter of minutes, Mr. Hunter returned to the office at which time he (Mr. Hunter) and the Complainant retired to Mr. Hunter's office behind closed doors. It was my intention to take the matter up with Mr. Hunter regardless of the Complainant's desires as a manager's responsibility to investigate and resolve allegations of disparate treatment and possible misconduct supercede the desires of the employees. Immediately after Complainant and Mr. Hunter spoke, Mr. Hunter came into my office and advised me of the Complainant's statements. Mr. Hunter's verbal report to me of the Complainant's statements were substantively consistent with that which the Complainant had reported to me earlier. Mr. Hunter further emphatically denied the occurrence of the barbeque as well as alleged statements at any time. I informed Mr. Hunter that we, as management are duty bound to have the allegation Complainant made reported to FPS Office of Internal Affairs ("OIA"). Subsequently, by the close of business that day, Mr. Hunter had reported the Complainant's allegation regarding the barbeque statements to OIA. To the best of my knowledge, this matter is currently under investigation by Chief Kevin Page, FPS OIA. Mr. Page will issue a Report of Investigation (ROI) once the investigation is concluded.

I regard the Complainant's allegation as a serious matter. The appropriate procedure to handle allegations of this nature is cause the matter to be referred OIA. OIA is procedurally required to submit certain allegations of employee misconduct to the Office

Page 4 of 7                                                                                   Initials

of the Inspector General, U.S. Department of Homeland Security (DHS/OIG). These procedures are strictly adhered to in FPS NCR to ensure fair, through and objective investigations. I have not received any complaints or information of a similar nature regarding Mr. Hunter.

I was the selecting official for the position of Supervisory Physical Security Specialist (Area Security Manager), GS-0800-12/13 advertised under vacancy announcement number 03992251. Based on my recollection, I did not select the panel members or provide any direction or instructions to the panel members concerning how to rate and rank applicants. Originally, the panel consisted of Earl Boyd, Director, NCR FPS Eastern District, Don Waldon, Director, NCR FPS Central District, and Paul Constable, Director, NCR FPS Virginia District. Each panel member was charged with the task of individually rating and ranking each applicant for the position. Panel members had instructions to submit their ratings and rankings to my office. Once all panel members submitted their rating of applicants, it was discovered that Mr. Boyd had rated only one or two of the 21 applicants, based on his interpretation of the instructions. Rather than sending the applications back to Mr. Boyd with clearer instructions, due to time constraints, I instructed Mr. Dean to rate the applicants. Mr. Hunter submitted to me a listing of the ranking applicants in accordance with their aggregated scores. There were nine (9) vacancies that needed to be filled from this list of applicants and I selected the top nine applicants for the position. I based by decision solely on the applicant composite rankings provided by Mr. Waldon, Mr. Constable and Mr. Hunter and submitted to me by Mr. Hunter. Prior to the selection at issue in this complaint, I do not recall serving as a

Selecting Official since joining the FPS in March 2003. However, I have been the Reviewing Official on a number of selections.

On a date uncertain to me, but within 90 days prior to the Supervisory Physical Security Specialist (GS-080) announcement referenced above (03992251), the Complainant and two or three other Training Instructors (GS-1712) were promoted to Physical Security Specialist (GS-080) at the same time. The Training Instructors were selected for the promotions under vacancy announcement number 03991601. There was never the intent to immediately transfer these employees to field positions, as alluded to in the instant complaint, because such an action would nearly deplete the Training Division staff of five instructors. Selecting the Instructors for the positions provided an avenue to promote the employees, and provided them with the opportunity for professional growth by performing training duties and conducting security surveys. The positions will be backfilled and the promoted Training Instructors, including Complainant, likely will be transferred to the field. Even after they are transferred to the field, it is also anticipated that these employees will continue to serve as adjunct Training Instructors. To the best of my knowledge, the Complainant has never requested management to transfer him to the field.

I did not discriminate against Complainant because of his race or any prior EEO activity. I believe that Complainant can be an outstanding employee when he focuses and uses his initiative to the furtherance of the FPS mission. The Complainant has made some substantial accomplishments, but seems to be more interested in promoting himself rather

Initials

than furthering the FPS mission. For example, without being asked, the Complainant put together a proposal for a Marine Patrol Unit for the NCR FPS, including making contacts with potential vendors of equipment, training and supplies. The Complainant enrolled in boat handler training, and made it clear to me that he expected to be appointed to head up the unit. I informed Complainant that I would not guarantee such a pre-selection. The Complainant replied that he understood that, but he was very interested in leading the unit, once formed.

I have read the foregoing statement consisting of seven (7) pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of February, 2004.

_Joseph W. Tindal_
Signature