# AFFIDAVIT

Washington

District of Columbia

I, Dean Hunter, Deputy Director, National Capital Region, Federal Protective Service ("NCR FPS") GS-15, Department of Homeland Security ("DHS"), Washington, DC, hereby affirm that this statement is the truth, the whole truth and nothing but the truth.

The Investigator has informed me that the following claims have been accepted for investigation:

> Whether Complainant was subjected to a pattern of discrimination when he was subjected to disparate treatment based on his race (Black) and in reprisal for prior EEO activity when the following incidents occurred:

> a. On September 11, 2003, Complainant was denied the opportunity to perform his duty as Acting Chief for the Training Division.

> b. On September 9, 2003, Complainant informed management of his knowledge of derogatory racial comments, regarding Black members of FPS, made by Dean Hunter at his home during a barbeque in which white male subordinates, only, were invited.

> c. On September 8, 2003, Complainant was notified by email that he was not selected for the position of Area Security Manager, GS-0080-12, under announcement number 03992251.

   d. On August 5, 2003, Complainant was refused a transfer into the position of Physical Security Specialist (LESO), GS-0080-12, in which he was competitively selected under announcement number 03991601.

My race is White and I have been previously involved in the EEO process as an Agency witness. I have held my current position for approximately 3 ½ years, and worked for the FPS and Federal government for 12 years. My first level supervisor is Joseph Trindal, Director, NCR FPS, DHS. My second level supervisor is Wendell Shingler, Director, FPS, DHS. My work site location is the Southeast Federal Center, 3rd and M Streets, SE, Washington, D.C. At the time of the claims raised in the complaint, I was Complainant's third level supervisor.

I became aware of Complainant's prior EEO activity about 1 year after I started working for NCR FPS. I do not know the details of the complaint that he filed, but was informed by my supervisor at the time, Andre Jordan, that the complaint was settled when Complainant received a one-year detail to another office within NCR FPS. As far as I know, the Complainant never listed me as an alleged discriminator in a prior EEO complaint.

When appointing employees to Acting Supervisors/Managers positions, I consider factors such as leadership and overall ability. Seniority and grade level are considerations, but are not controlling. Mr. Trindal and I decided to detail Harold Miller to the position of

Acting Director, Training Division when the detail of Anthony Surbeck, Acting Director, Training Division, was terminated. Mr. Miller was considered the best candidate for the position. However, once Complainant objected to the Mr. Miller's appointment, we reconsidered our decision. The appointment was rescinded the same day it was made and a GS-13 Area Commander, Elliot Grollman, was appointed to the position in an acting capacity. Complainant did not suffer any harm as a result of the action, Mr. Miller did not receive any additional pay, and Complainant's concerns about the action were appropriately addressed. It is significant to note that even through Complainant and Mr. Miller were not at the same grade level, they were performing the same overall duties as Training Instructors.

On the same day that Mr. Miller was appointed to act as Director of the Training Division, Complainant attended a supervisory staff meeting. Since Complainant was not a supervisor, nor was he acting in that capacity, I asked Complainant's second level supervisor, Dave Mahmoud, why the Complainant was in attendance. I later learned that Mr. Mahmoud asked the Complainant to leave the meeting since he was not acting in a supervisory capacity.

I have made numerous appointments of employees to serve as acting supervisors over the past several years. For example, within the past two to three months, I have appointed from ten to fifteen employees, which have included employees of diverse racial and ethnic backgrounds. At least two of those employees had filed EEO complaints, prior to their appointment as acting supervisors.

Initials

On September 8th, 2003, the Complainant visited my office to discuss his non-selection for the Area Commander position. I explained to the Complainant that the position for which he applied was a supervisory position with broad oversight of both law enforcement and physical security programs. I further explained that to the Complainant that he fell short in my opinion in that he did not have significant experience as a law enforcement supervisor or experience in the FPS physical security program. I noted, however, that he still did very well in the competition. I told the Complainant that he scored tenth out of twenty-one applicants. I indicated that the nine top scoring candidates were selected to fill the nine vacancies. I also told the Complainant that I thought he had a strong future ahead of him with FPS. I reiterated that he had been promoted within the last four months to an Inspector position. I told him that the Inspector position would give him the requisite physical security skills that would allow him to better compete for Area Commander positions in the future. I reiterated to the Complainant that I was the selecting official and an interview panel participant for his promotion to an Inspector position just four months prior, and that he was the second highest scoring candidate for the Inspector position. I told him that I was very impressed with his interview for that position.

Following this discussion, the Complainant stated that he heard that I recently had a barbeque at my home, which was attended by only White employees. The Complainant indicated that I used racial epithets at the barbeque and further stated that only White personnel would be promoted in FPS in the future. Complainant would not reveal the

source of the rumor, but asked if the allegation was true and whether it had a bearing on his non-selection for the Area Commander position. I informed Complainant that the allegation was absolutely false. Further, I pointed out to the Complainant that of the nine employees selected for the Area Commander position, four were African-American and to my knowledge at least two had engaged in prior EEO activity. I also pointed out to the Complainant that his highest scores on the Area Commander panel came from the two White panel members, myself and Paul Constable, with his lowest score coming from an African-American male, Don Waldon. I also reiterated that I had selected him for an Inspector position, a promotion, just a few months prior. Of the ten selections for the Inspector position, four were African-American (including the Complainant). I closed the meeting with the Complainant by reiterating that no such barbeque occurred and that all selections in FPS are made solely on the basis on the knowledge, skills and abilities of the applicants, with neither race nor prior EEO activity having any bearing on selections.

After the Complainant left my office, I immediately drafted a memorandum to the FPS Office of Internal Affairs (OIA) requesting an investigation into the barbeque allegations made by the Complainant. I fully expect that the OIA will complete its investigation and issue a report, which will conclude that the allegation is not substantiated. I am looking forward to having my name cleared of this preposterous allegation that seems to have taken on a life of its own around the organization.

I served on the panel that rated and ranked applicants for the position of Supervisory Physical Security Specialist (Area Security Manager), GS-0080-12/13, advertised under

vacancy announcement number 03992251. Originally, the panel members, selected by me with approval from FPS NCR Director Joe Trindal, included the three District Directors in the NCR FPS, i.e., Earl Boyd, Eastern District; Don Waldon, Federal Triangle and Central District; and Paul Constable, Virginia District. I was charged by Joe Trindal with being the Selecting Official.

Originally, each District Director was asked to rate each applicant on the basis of their application and the District Directors' direct knowledge of that person's abilities. Panel members were instructed to rate applicants based on their experience and background using the KSAs for the Area Security Manager Position. Scores on a scale of one to five were to be done for each KSA. To maintain objectivity in the process, each District Director was asked to conduct the scoring process without discussing the scoring with the other panel members. Our Human Resources Specialist, Francine Anderson, and our Office of Regional Counsel attorney, Katharine Johnson, were consulted in the selection process that was used. Francine Anderson provided the appropriate forms and it is my recollection that Katharine Johnson provided me with a draft e-mail to the panel members outlining the instructions. During the course of the process, I believe at least one panel member had questions about the process which needed clarification. I referred that individual to Francine Anderson for assistance. It was my understanding that all issues were resolved and that all panel members were approaching the panel deliberations in the same manner.

When the panel members completed the process, they sent their score sheets to the Director's Office in sealed packages. I opened the packages in front of Joe Trindal, FPS NCR Regional Director, with the intent of consolidating the scores into a single spreadsheet. Upon opening Mr. Boyd's package, however, I noted that he had only rated two of twenty-one applicants. Apparently, he rated applicants only if he had direct supervision of that employee at some point in time. The other panelists rated candidates even if they had not directly supervised that employee. Rather than sending the package back to Mr. Boyd to rate and rank all applicants, I rated and ranked the applicants, including the two Mr. Boyd had rated. This decision was made in consultation with Joe Trindal. The reason the applications were not sent back to Mr. Boyd was because the referral was set to expire within a very short time frame. Had we sent them back to Mr. Boyd, he may not have been able to complete the process in time, and we would have been unable to make any selections on this advertisement.

I did not look at the scores of the other panel members when conducting my scoring. I did my scoring in the same manner as the two other panelists, on the basis of their application and my knowledge of the employees' skills and abilities. Most of the applicants had worked for me, directly or indirectly, so I had a good idea of their background and skills. In rating applicants for the GS-12 and GS-13 levels, no distinction was made between the two grade levels, and the same KSAs were used. When I completed my scoring, I entered the scores of each panel member into a spreadsheet. The scores of each panelist were equally weighted and were combined for a

single score. The top nine scoring candidates were chosen by me, as the Selecting Official.

Complainant's allegation that I manipulated the scores to cause him to miss the cut-off score is totally unfounded. Again, he was scored lowest by the African-American panel member, not me. On September 8, 2003, I had a discussion with Complainant regarding my rating of his application and informed him that he had just received a promotion to Inspector and that should help him move forward with competing for positions such as Area Commander.

For the past two years, I have served on approximately five panels for NCR FPS, but I cannot remember the vacancy announcement numbers. Overall, the panels I served on resulted in the hiring of individuals with diverse ethnic backgrounds, including employees who had filed prior EEO complaints.

When Complainant was promoted to Inspector, two other Training Instructors (both White) were also promoted. Complainant and the other two Training Instructors were asked to remain in the Training Division, performing both training duties and conducting security surveys. All agreed to do so, including Complainant. If Complainant now wants to leave, he will be transferred as requested. However, this offer was made in the informal counseling portion of the EEO complaint process and the Complainant requested to stay in the Training Division.

I did not discriminate against Complainant, as alleged. I believe Complainant is a good employee with a wide variety of skills. I continue to believe that he will go far in this organization.

I have read the foregoing statement consisting of ____ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of January, 2004.

_____
Signature

# PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to GSA/DHS activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of GSA/DHS employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____          _____
Signature of Interviewer                 Signature of Witness

12/30/03                                 Washington DC – Navy Yard
_____          Bldg 74
Date                                     Place