## EQUAL EMPLOYMENT OPPORTUNITY
### INITIAL COMPLAINANT CONTACT/INTERVIEW WORKSHEET

1. **DATE CONTACTED EEO OFFICE**: January 2, 20001 (Telephonically)

2. **COMPLAINANT'S NAME:**  Rahim A. Muhammad

   **RNO:**  Black (African American)    **GENDER:**  Male

   **TITLE/SERIES/GRADE**: Law Enforcement Instructor, GS-1712-11

3. **HOME ADDRESS:** 9301 Gwynndale Court, Clinton, MD 20735

   **HOME PHONE NUMBER**: (301) 868-3406

4. **ORGANIZATION:**  FPS, Bldg 74, SE Federal Center, 2nd & M Streets, SE, Washington, DC. 20370

   **WORK PHONE:**  (202) 619-9337

5. **DATE OF MOST RECENT ALLEGED INCIDENT:**    January 2, 2001

6. **SPECIFIC ALLEGED DISCRIMINATORY ACTION(S):**  Claim that his supervisor, Chief Leslyn Erickson (white, female) has discriminated against him based on his race (African American) and religion (Muslim) when he was harassed on a continuous basis from May 2000 through January 2, 20001, receiving disparaging treatment causing a hostile work environment.  Specifically, the following actions took place at Enclosure 1 dated January 3, 2001..  On January 3, 2001, Mr. Muhammad had meeting with Chief James Boyd (black, male), Chief of the Police Bureau requesting reassign-ment to the FPS Law Enforcement Division (202) 690-9159).  Mr. Muhammad still has a valid 318 authority to be a law enforcement officer and instructor.

7. **BASIS:** Race (African American)    Religion (Muslim)

8. **RESPONDING MANAGEMENT OFFICIALS:**  Chief Leslyn Erickson, FPS, Bldg 74, SE Federal Center, 2nd & M Sts, SE, DC 20370

   **TELEPHONE NO:** (202) 690-8960

9. **REPRESENTATIVE:**  None at this time
   **ADDRESS:**
   **TELEPHONE NO:**

*Requested Coun. on 1/3/01*
*SSL*

INITIAL COMPLAINANT CONTACT/INTERVIEW WORKSHEET
Page 2

10. **REQUESTED RELIEF: Reassignment** outside of the Training Academy and placed into the law enforcement occupation within GSA equivalent to a GS-11 (Lieutenant).

11. **Witness(es) :** The following people have first-hand knowledge of Mr. Muhammad's disparaging treatment causing a hostile work environment:

| Name | Telephone No. |
|------|---------------|
| Linda Muhammad | (202) 690-8960 |
| Carlton Tucker | (202) 619-9385 |
| Vicki Witherspoon | (202) 619-9335 |
| William V. Johnson | (202) 619-9338 |
| Gregory Jefferson | (202) 619-9336 |

_____
EEO COUNSELOR

**GENERAL SERVICES ADMINISTRATION**
**1801 F Street, NW**
**Washington, DC 20405-0002**

EEO COUNSELOR'S REPORT

29 C.F.R. SECTION 1614.105(c)

## A.    AGGRIEVED PERSON

Name:                              Rahim A. Muhammad (Aggrieved person)

Job Title/Series/Grade:           Federal Protective Services
                                  Law Enforcement Instructor, GS-1712-11
                                  General Services Administration, NCR

Place of Employment:              General Services Administration
                                  FPS, Bldg. 202, SE Federal Center
                                  2nd and M Streets, SE
                                  Washington, DC 20370

Work Phone No.:                   (202)619-9337

Home Address:                     9301 Gwynndale Court
                                  Clinton, MD 20735

## B.    CHRONOLOGY OF EEO COUNSELING

Date of Initial Contact
  with EEO Office:                January 25, 2001

Date of Initial Contact with
  Counselor:                      February 14, 2001

Date of Initial Interview:        February 20, 2001

Date of Alleged
  Discriminatory Event:           January 24, 2001

45th Day After Event:             March 10, 2001

                                                        *EEO Rec'd*
                                                     *MAR – 7 2001*
                                                        *B-3*

Reason for Delayed Contact
  Beyond 45 days, if applicable:  N/A

Page 1 of 16

Date of Final Interview:          March 6, 2001

Date of Notice of Right to File
   a Formal Discrimination
   Complaint:                  March 6, 2001

Date Counseling Report
   Requested:                 February 2, 2001

Date Counseling Report
   Submitted:                 March 7, 2001

## C.    BASIS(ES) FOR ALLEGED DISCRIMINATION

(1)   [X]   Race (Specify): __African American_____
(2)   [ ]   Color (Specify):_____
(3)   [ ]   National Origin (Specify):_____
(4)   [ ]   Sex (Specify): _____
(5)   [ ]   Age (Specify):_____
(6)   [ ]   Mental Handicap (Specify):_____
(7)   [ ]   Physical Handicap (Specify):_____
(8)   [X]   Religion (Specify): __Muslim_____
(9)   [ ]   Reprisal (Identify earlier event and/or opposed practice, give date):
                _____

## D.    ALLEGATIONS OF DISCRIMINATION

Mr. Muhammad states that he has received adverse treatment over the past eight or more months from his supervisor Leslyn Erickson as a result of his race (African American) and religion (Muslim).

Mr. Muhammad states that in May 2000 he returned to work after having been out for some time due to a traumatic duty related injury. He states that upon entering his office, he noticed boxes had been stacked completely blocking his seat. He further states that a note had been attached to the glass window of his office for all to see stating "I guess you will have to have a bake sale to pay for this". Mr. Muhammad states that these embarrassing antics were directed by his supervisor Leslyn Erickson who had directed his coworkers Carlton Tucker and Vicki Witherspoon to place them there. He further states that documentation of his having purchased these items have been placed on his record indicating that he ordered $46000 worth of the brochures, however he officially requested $2,500 worth.

Mr. Muhammad states that in May he was directed by the Law Enforcement Assistant Chief to design and conduct classes in Crowd Control. He states that Instructor Tucker (Black)

assisted him in the development and preparation of the class. He states that in a staff meeting later that day Chief Erickson stated that Instructor Harold Miller would be the Manager of the program that he and Tucker had developed. Mr. Muhammad states that he disagreed with Chief Erickson. He states that Instructor Miller was a Junior Instructor and had not worked on the program at all. He states that Chief Erickson told him that it was her decision and it was final.

Mr. Muhammad states that on September 21, 2000, Chief Erickson asked him to come into her office. He states that she indicated to him that she needed to reiterate the leave policy for when an instructor is late. He states that she then accused him of being late without notifying anyone. He states that she did not know when or who he had talked to about being late or why he was late. He states that when he gave Chief Erickson the facts about the matter, she then stated that the conversation was over and to "Drop It!". Mr. Muhammad states that Linda Muhammad, Chief Erickson's receptionist at the time, knew that he was going to be late but Chief Erickson had not spoken to her about it. He states that Ms. Muhammad had also told him that Chief Erickson had been auditing his attendance for the past six or seven months.

Mr. Muhammad states that other instances of such abuse included being called at home by Chief Erickson while he was recovering from his injury to find out when he was returning to work and being paged at the request of Chief Erickson just prior to his leaving on vacation because she (Erickson) could not find his leave slip, which she had approved two months earlier. Mr. Muhammad states that Chief Erickson allowed Instructor Miller to take leave without completing an incident report, yet came to him the day after Miller's departure and asked him to complete the paperwork for the incident.

Mr. Muhammad states that on December 19, 2000, Chief Erickson came to his office and asked him to go to ROB for the Christmas ceremony and special presentation for Instructor Miller. He states that he informed Chief Erickson that he would rather decline because he does not celebrate Christmas. He states that Chief Erickson stated that she did not understand and that if it was Ramadan, his religious holiday, they would attend for him. He states that she then walked out of his office and yelled "now you're religious!". Mr. Muhammad states that he was personally insulted and offended by Chief Erickson's behavior.

Mr. Muhammad states that later that day he was informed by Chief Erickson that he would conduct contract guard testing in place of Instructor Jefferson and that he was to also attend the Christmas ceremony. Mr. Muhammad states that he felt persecuted due to his faith.

Mr. Muhammad states that on January 2, 2001 he was informed by Chief Erickson that she was to have a cursory meeting with him regarding his time and attendance. He states that she indicated to him that she had held similar meetings with his coworkers, with the exception of Instructor Miller. He states that Chief Erickson indicated that he was the only person she had audited because of the number of Mondays and Fridays he had taken off during 2000. He

states that he told her that in the medical program he belonged to, appointments, are based upon the nature of the injury and based on his injury, they were on Mondays and Fridays. He states that Chief Erickson informed him that she would take action if he continued to take sick leave on those days.

Mr. Muhammad states that later the same day, after the meeting with Chief Erickson, he approached Instructor Tucker who informed him that Chief Erickson had directed him to place him (Aggrieved) on the duty schedule on Fridays and Mondays with contract guard duties. Mr. Muhammad states that, consequently, if he did not come to work at those times, it would cause disruption in the schedule and effect other instructors.

Mr. Muhammad states that on January 25, 2001, Instructor Witherspoon informed him that Chief Erickson has asked her to assume the duty of scheduling instructors from Instructor Tucker and that he (Aggrieved) was to be scheduled for Contract Guard duties each week on Mondays and Fridays.

Mr. Muhammad states that such treatment has caused a volatile atmosphere, a depressing work environment for himself and his peers. He states that he has been singled out, moved to an empty office away from the other instructors. He states that he requested to be reassigned to the Law Enforcement Division in a comparable position out of the training section as his integrity and ability as a Law Enforcement Instructor has been tainted by the maltreatment he has received from Chief Erickson.

Mr. Muhammad states that the move to the new office occurred on January 9, 2001. He states that Chief Erickson told him that the move should be considered as a perk and not as being isolated. He states that the move, which is away from other instructors, created friction concerning his assignment. He also states that during this time frame Chief Erickson attempted to take his duties as Assistant In-service Program Manager away from him.

Mr. Muhammad states that on January 9, 2001, Chief Erickson spoke with him about supporting the PDT Program scheduled for February 27, 2001. He states that later, on January 24, 2001, Chief Erickson called Kevin Charron at FLETC Georgia and informed him that Instructor Tucker would be replacing him as the supporting instructor. Mr. Muhammad states that later that day Chief Erickson called him to her office and in front of Instructor Coleman, said that she had not told him that he would be the PDT Program Instructor for his section. Mr. Muhammad states that he then produced notes he had taken during their January 9th meeting and showed Chief Erickson that she had contradicted her earlier statement. He states that Chief Erickson asked to see his notes then told him that she did not say that.

Mr. Muhammad states that he then told Chief Erickson that they could not work together and requested to be reassigned from her authority. Mr. Muhammad states that following the denial of his request, he spoke with the Deputy Director concerning his grievance.

Mr. Muhammad states that as a result of these actions he has suffered mental anguish, embarrassment and carried an unfair workload.

Mr. Muhammad further states that he is six months behind for promotion purposes because Chief Erickson did not process his promotion paperwork in time and Personnel is no longer processing back dated promotions.

## E.    REMEDY REQUESTED

Mr. Muhammad stated that the following remedy is being sought:

1.    Reassignment outside of the Training Academy and to be placed into the law enforcement occupation within GSA equivalent to a GS-11 (Lieutenant).

2.    Compensation for damages: mental anguish and embarrassment.

## F.    THE EEO COUNSELOR ADVISED THE AGGRIEVED PERSON IN WRITING OF THE RIGHTS AND RESPONSIBILITIES CONTAINED IN THE EEO COUNSELOR CHECKLIST.

Mr. Muhammad acknowledged receiving the following at the initial counseling session:

1.    Notice of Rights and Responsibilities
2.    Cooperation with Equal Employment Opportunity Counselors and Investigators
3.    Matters raised at Counseling
4.    Election between the Negotiated Grievances and the EEO Complaint Procedures
5.    Confidentiality Statement
6.    Processing of Mixed Cases Complaints and Appeals
7.    Compensatory Damages
8.    Equal Pay Act
9.    Mailing Address
10.    Back Pay
11.    Designation of Representative
12.    EEO Complaint Timeframes
13.    Age Discrimination Complaints

## G.    SUMMARY OF COUNSELOR'S INQUIRY

(1)    <u>Personal Contacts</u>

Leslyn Erickson, Chief, Training Section
Earl Boyd, Deputy Chief

Don Waldon, Assistant Chief of Police
Linda Muhammad, Secretary
Carlton Tucker, Training Instructor
Vicki Witherspoon, Training Instructor
William Johnson, Training Instructor
Gregory Jefferson, Training Instructor

02/20/01    Initial contact/counseling with Rahim Muhammad (aggrieved person) by EEO
Counselor to discuss his complaint in detail. (60 minutes)

02/26/01    Carlton Tucker                    12:30pm
Training Instructor
SE Federal Center, Bldg. 202
Washington, DC        (202)619-9385

Instructor Tucker (Black) states that he has been with the Federal Protective Service
since October 1996. Instructor Tucker states that the boxes which were placed in Mr.
Muhammad's office were materials for the DC Code Training class. Instructor
Tucker states that Mr. Muhammad is great at performing his duties and is always
prepared for training. He states that the moving of the boxes into Mr. Muhammad's
office occurred about six to eight months ago (August/September). Instructor Tucker
states that Chief Erickson did not know the cost of the items or forgot, that was the
reason for the note on the window. He states that she later found out that he had not
done anything wrong.

Instructor Tucker states that he thinks a lot of the problems that exist are a result of
Chief Erickson's management style. He states that she has one of the roughest
exteriors of a supervisor that he has ever seen; qualities that she could work on.

Instructor Tucker states that personally he has had problems with her communication
skills and that he has talked to her several times when she has offended him.
Instructor Tucker states that Chief Erickson tries to create a paper trail and that she
is very good at it.

Instructor Tucker states that Chief Erickson named Instructor Miller as Assistant
Program Manager and that Captain Grollman was named the Manager of the Crowd
Control Program. He states that Captain Grollman was named Manager because of
his rank and experience. He states that he and Mr. Muhammad did design everything,
and Instructor Miller was really just a gofer.

Instructor Tucker states that he thinks Chief Erickson makes up titles for Instructor
Miller just to keep him occupied

Instructor Tucker states that he was told to schedule Mr. Muhammad for Contract Guard testing on Mondays and Fridays. He states that he did not ask Chief Erickson why, but he had a good idea. He states that Chief Erickson did not ask for leave slips from Mr. Muhammad for the days he received medical treatment. Instructor Tucker states that the majority of the time Mr. Muhammad was gone was on days that he was not scheduled at all. Instructor Tucker states that he feels that Chief Erickson created the problem herself. He states that earlier they had been working long hours and that she told the staff that when things slowed down they would be able to take leave, but that never happened. Instructor Tucker states that he would like to think that subordinates could tell him what was going on so that some type of arrangement could be made with them to make certain their needs could be accommodated. He states that there should be that kind of trust.

Instructor Tucker states that he never witnessed any comments made by Chief Erickson concerning Mr. Muhammad's religion. He states that Mr. Muhammad has told him about a couple of situations.

Instructor Tucker states that Chief Erickson's main problem is communication; her communication skills are bad, in fact nonexistent. He states that she has given him some challenging projects but their supervising styles are different.

Instructor Tucker states that it is his understanding that a Team Leader position is opening up in October 2001 and he thinks Chief Erickson is trying to set Instructor Miller up for the position, although his skills are lower than anyone else on the team. Instructor Tucker states that he thinks he or Muhammad should be Team Leaders because of what they have accomplished since they were hired there in 1996. He states that to consider anyone else for that GS-12 position would be unjustified.

Instructor Tucker states that he spoke with Chief Erickson about moving Mr. Muhammad to an office and that he resented the fact that she had done it. He states that Chief Erickson had no concern about how other team members would/did react about the move. He states that he does not feel that she used the move as ill will.

Instructor Tucker states that as of last Thursday, February 22nd, Mr. Muhammad is scheduled to teach the class in Georgia. He states that Chief Erickson has instructed others to do things, such as a survey of a training session that was held, and does not tell anyone else what is going on; she does not let the left-hand know what the right-hand is doing. Instructor Tucker states that there have been other complaints about Chief Erickson but nothing has been done. He states that she does not show up for work, and he does not feel comfortable around her. He states that he cannot say that her indifference is prejudice but her actions shows that something is wrong and that she does not interact well with Blacks.

02/26/01    Vicki Witherspoon                        1:00pm
            Training Instructor
            SE Federal Center, Bldg. 202
            Washington, DC        (202)619-9335

Instructor Witherspoon (Black) states that she has been with the Federal Protective Service since September 1996. She states that about six to eight months ago, Chief Erickson instructed her to help place the boxes in Mr. Muhammad's office. Instructor Witherspoon states that the boxes were originally in the training staff room and would normally have gone to storage. She states that the brochures that were in the box would have been used within a week or two. Instructor Witherspoon states that she suspects the reason this was done was because of the money that was spent on the purchase, which is the reason for the note left on his window.

Instructor Witherspoon states that she is not aware of any statements made by Chief Erickson concerning Mr. Muhammad's religion. She states that she acquired the task of preparing the daily training schedule and was told by Chief Erickson to schedule Mr. Muhammad every Monday and Friday for Contract Guard staffing. Instructor Witherspoon states that two weeks ago, around February 12th, she was told to put him back on normal duty schedule because he has learned his lesson now.

Instructor Witherspoon states that as of last Thursday, February 22nd, Mr. Muhammad has been rescheduled to teach the class in Georgia. She states that during a staff meeting in June/July 2000, Chief Erickson announced that Mr. Muhammad was being moved to an office and that others would be allowed to rotate.

Instructor Witherspoon states that the biggest problem with Chief Erickson is her lack of management skills and that she is not a people person. She states that Chief Erickson's tardiness to work is a reflection of how she handles things. Instructor Witherspoon states that she does not see blatant discrimination, but knows that the Chief asks Mr. Muhammad to do a lot of things that other members of the staff do not become aware of until after he is done.

02/27/01    Don Waldon                              10:00am
            Assistant Chief of Police
            SE Federal Center, Bldg. 74, Room 200
            Washington, DC        (202)619-9201

Chief Waldon (Black) states that he has no first hand knowledge concerning the issues in Mr. Muhammad's complaint. Chief Waldon states that up until Chief Boyd was hired in August 2000, he was the Acting Training Chief and that once Chief Boyd was hired, Training and Communications became separate sections. Chief Waldon states that Chief Erickson does not report to him so he is no longer involved.

Chief Waldon states that he is aware of the conflict between Mr. Muhammad and Chief Erickson but he cannot say who is right or wrong. He states that Mr. Muhammad is intelligent with a lot of experience and that his exuberance is sometimes a drawback. He states that sometime between December 22, 2000 and January 20, 2001, Mr. Muhammad came to him and made him aware of the fact that he wanted to be reassigned. He states he told Mr. Muhammad that his reassignment would not be his decision. He states that he believes that he sent Chief Boyd a memorandum requesting to come back to the police side. Chief Waldon states that this could not be done because of Mr. Muhammad's grade level. He states that he believes the request went all the way to the Deputy Director, where it was turned down.

02/27/01        Gregory Jefferson                    11:30am
                Training Instructor
                SE Federal Center, Bldg. 202
                Washington, DC      (202)619-9336

Instructor Jefferson (Black) states that he has been at the Academy for six years. He states that he has no first hand information concerning Mr. Muhammad's complaint. He states that although what he knows is hearsay, that Chief Erickson has done some of the same things to him. Instructor Jefferson states that he has known Mr. Muhammad for three years and that he is straight forward and would not lie.

Instructor Jefferson states that Chief Erickson is a "pistol" and has only been there about a year and a half. He states that he was aware of the boxes being moved into Mr. Muhammad's cubicle; he states that he does not know if they were placed there because of an assignment or because Chief Erickson was jerking him around. He states that she does do that. Instructor Jefferson states that if you make a statement that Chief Erickson does not like and it gets back to her, that she "gets on you for it". He states that she does however, stroke Instructor Miller.

Instructor Jefferson states that Instructors Tucker and Muhammad did put together the Riot Control class, then out of the blue Chief Erickson put Instructor Miller in charge. He states that they spoke up in the meeting, but he did not know what happened as a result.

Instructor Jefferson states that Chief Erickson has given Instructor Miller choice assignments and that they all came over to the Federal Protective Service at the same time.

Instructor Jefferson states that Chief Erickson does not discuss anything with anyone. He states that she just makes a decision with no explanation. He states that she could at least discuss what is going on with the staff. Instructor Jefferson states that they are not treated as adults, she has no management skills, no people skills and that she

has brought the morale of the staff down. Instructor Jefferson states that it use to be an enjoyment to come to work but since Chief Erickson's arrival that has changed.

02/27/01    Linda Muhammad                10:45am
           Secretary
           SE Federal Center, Bldg. 202
           Washington, DC        (202)690-8960

Ms. Muhammad (Black) states that she has been with Federal Protective Service since April 2000. Ms. Muhammad states that on the day in question concerning Mr. Muhammad being questioned by Chief Erickson about not calling in that he had reported out and that he was out of state. Ms. Muhammad states that she thinks Chief Erickson had paged Mr. Muhammad. She states that she never asked her if he had reported in. Ms. Muhammad states that Chief Erickson does at times ask who is in or who has reported and that it is normal for her to ask.

Ms. Muhammad states that in May 2000 she was told by Lieutenant Morris to keep track of when Mr. Muhammad was out and that if she saw a pattern of when he (Aggrieved) was taking off to report it to Chief Erickson. Ms. Muhammad states that she did not specify that she should track anyone else. She further states that Chief Erickson has not asked about Mr. Muhammad since December 2000 following her illness and the death of her father.

Ms. Muhammad states that she never heard Chief Erickson make a comment about religion other than the email that was sent out around Christmas. Ms. Muhammad states that she was offended by the email because who else would not have participated in the Christmas ceremony but she and Mr. Muhammad.

Ms. Muhammad states that she does not know if Chief Erickson does the things she does because of her lack of management skills or if its because of her attempts at keeping disorder.

Ms. Muhammad states that she was aware of the box incident. She states that Mr. Muhammad had made a purchase order for some handouts for a class and that the items were placed in his cubicle for everyone to see. She states that Chief Erickson never said anything about why the boxes were there and she states that she never asked.

Ms. Muhammad states that Chief Erickson needs help with her communication skills. She states that she is not clear in what she says which means things can be misconstrued. Ms. Muhammad states that Chief Erickson has done things to her that were offensive and that she has a "get over it attitude" and that as a result the morale around there has dropped. Ms. Muhammad states that Chief Erickson keeps

instructors at each other; she will tell Muhammad one thing then tell another instructor something else then deny ever having said anything.

02/27/01     Leslyn D. Erickson              12:00pm
             Chief, Training Section
             SE Federal Center, Bldg. 202
             Washington, DC    (202)690-8960

Chief Erickson (White) states that she has been with the Federal Protective Service for about a year and a half. She states that while Mr. Muhammad was out he received a delivery order which was to be paid on a government credit card. She states that Mr. Muhammad had order 5000 handouts. Chief Erickson states that they have 200 officers and that the information changes so the material can be only used once. She states that to do future classes the handouts would need to be revised and that since Mr. Muhammad had made the order and they were tight on storage along with the fact that she did not want the room the boxes were stacked in turned into storage, she had the boxes placed in Mr. Muhammad's office.

Chief Erickson states that he laughed about it with her. She states that the note that was place there was intended to be humorous. Chief Erickson states that she tries to avoid formal discipline and to deal informally with her staff. She states that she was attempting to bring to Mr. Muhammad's attention the fact that money was needlessly spent.

Concerning the Crowd Control class and assigning Instructor Miller as the Manager, Chief Erickson states that they have a career ladder for instructors which is GS-7/9/11 and that there are critical elements which require instructors to do several tasks related to programs, including scheduling and managing. She states that in January 2000 Muhammad, Tucker and Bill Johnson were all grade 9s. She states that in order to get a promotion to an 11, she had to make certain that they covered all critical elements for an 11, which included managing a program. Chief Erickson states that by March 2000 she had been successful at making certain that the three of them had been approved for an 11. She states that the next person in line for career ladder was Instructor Miller. Chief Erickson states that Miller's ladder increase was a short time away so she wanted to get his program management under his belt. She states that Tucker and Muhammad were teaching full time and that it is impossible to teach and manage at the same time, it would require 12 hour days. Chief Erickson states that this did not put Instructor Miller in charge of the instructors, it was purely administrative. No supervision over instructor scheduling. She states his duties included getting the necessary equipment, setting up and tearing down and recordkeeping. She states that this year Vicki Witherspoon is on track for an 11.

Chief Erickson states that Mr. Muhammad told her that he was happy to have the

office. She states that he was moved into the office in October 2000. She states that this gave him an elevation among the staff which is what he wanted. Chief Erickson states that Mr. Muhammad is a Program Manager which is a position in which he has to discuss and deal with confidential matters and she felt that an office was needed for the Program Manager for privacy. She states that the Program Manager is appointed yearly and that the next individual will have the office. Chief Erickson states that she attempted to fix Mr. Muhammad's complaint about being isolated and told him that if he gave up the office he would also have to give up being Assistant Program In-service Manager and he chose to remain in the office.

Chief Erickson states that Mr. Muhammad wanted to go to Georgia when in-service was scheduled to start and she couldn't let the Program Manager go. Chief Erickson states that the class is only for two days but Mr. Muhammad wanted to go for a month and that he has also gone before. She states that she told Mr. Muhammad that she would have to go down the roster of qualified instructors to see who's turn it was to go. She states that once she went down the list of qualified individuals, because of conflicts, Mr. Muhammad is being allowed to go.

Chief Erickson states that there are lots of things Mr. Muhammad wants to do and that she is trying to accommodate him within limits. She states that Mr. Muhammad is ambitious and that she has been giving him the leg up on advancements.

Chief Erickson states that she does not recall accusing Mr. Muhammad of being late. She states that she has told her entire staff that up to a half hour late they can put in a leave slip and over that, they talk and decide what to do.

Chief Erickson states that when Mr. Muhammad had his traumatic injury he indicated that he would be fine, however 7-10 days later he put in a leave slip for doctors appointments. She states that she told him that he did not have to use sick leave, he could use administrative leave. Chief Erickson states that approximately three months after he returned, she did a leave balance review of the entire staff. She states that there was nothing formal or written, it was just to let the staff know if they were getting into the dangerous leave area. She states she has done it before approximately 10 months ago. She states that she goes back in the leave record and looks at the use/lose and compares the beginning and ending balances. She states that she found three people in this situation, one was Muhammad.

Chief Erickson states that she also noticed a pattern with Muhammad calling in when associated with a holiday or weekend. She states that she found that more than half of the time was on a holiday or a Monday. She states that she talked about it with Lieutenant Morris and states that Lieutenant Morris stated that she had noticed a pattern too. Chief Erickson states that she considered a leave restriction letter. She states that Mr. Muhammad never told her that the absences were due to doctors

appointments.

Chief Erickson states that she did indicate that Mr. Muhammad was to be scheduled for Mondays and Fridays for two months as opposed to the leave restriction letter. When asked if she discussed the issue with Mr. Muhammad, she stated no.

With reference to Mr. Muhammad's issue concerning his religion, Chief Erickson states that she asked him to go to the Toys for Tots ceremony; she states that it was not a celebration of Christmas. Chief Erickson states that her remark was "its not even religious" as she left Mr. Muhammad's office and that she had Instructor Jefferson go and that Mr. Muhammad did the testing for him.

Chief Erickson states that she does not recall an incident report involving Instructor Miller. She states that she did call Mr. Muhammad at home because they needed to find out from him if he was returning to work so that he could be placed on the schedule.

Chief Erickson states that she does not have the power to reassign Mr. Muhammad. Chief Erickson states that she is also aware that Mr. Muhammad has been trying to get another job at FLETC. She states that several months ago he asked Clarence Edwards, without telling anyone, for a position to be created at FLETC and states that it is not in his best interest to jump the chain of command. She states that Mr. Muhammad has also gone to Chief Boyd with a written proposal in the form of a memorandum looking for a reassignment. Chief Erickson states that she has tried to enhance what he has asked for. She states that she feels watched by Mr. Muhammad and that he is watching and waiting for her to make a mistake.

02/27/01      Earl Boyd                    1:20pm
              Deputy Chief
              SE Federal Center, Bldg. 74
              Washington, DC    (202)205-9488

Met with Chief Boyd (Black) in an attempt at resolving the complaint of Mr. Muhammad. Chief Boyd states that there is no resolution for the complaint, that he has told Mr. Muhammad that if he feels that he has been discriminated against then he should proceed and file a formal complaint. Chief Boyd states that the stacking of boxes in Mr. Muhammad's cubicle was meant as a joke and that he does not see how it can be considered discrimination. Chief Boyd questioned other items at issue and disputed those also.

Chief Boyd states that he is not the person who can provide a resolution, he states that Andre Jordan, Director, is. He states that even if the investigator were to speak with Mr. Jordan concerning the issue that his recommendation to Mr. Jordan would

be not to reassign Mr. Muhammad.

03/06/01    William V. Johnson                    11:00am
            Training Instructor
            SE Federal Center, Bldg. 202
            Washington, DC    (202)619-9338

Instructor Johnson (Black) states that he has been with the Federal Protective Service for four years. He states that he is not aware of all of the events in Mr. Muhammad's complaint but he is aware of some of them. Instructor Johnson states that he is aware of the office move and the animosity created as a result, and of Mr. Muhammad being scheduled to teach at FLETC.

Instructor Johnson states that Chief Erickson's actions give the impression that she is afraid of men and that fact and the way she talks down to people makes for a tense, hostile working environment. He states that as much as he loves his work, the environment is so hostile and oppressive and Chief Erickson is so vindictive that he is seeking work elsewhere.

Instructor Johnson states that he has also had problems with Chief Erickson. He states that her behavior is strange and that she is away from work 50% of the time. He states that Chief Erickson shows favorable treatment to the white instructor when he is the person who does the least. Instructor Johnson states that he and other instructors have provided Chief Erickson with constructive suggestions for changes at the Academy, none of which have been implemented, but when the white instructor makes a suggestion she executes it.

Instructor Johnson states that Chief Erickson is highly condescending to Mr. Muhammad, Tucker, Witherspoon and himself.

Mr. Muhammad was then provided with the following documents:

Notice of Final Interview/Notice of Right to File a Discrimination Complaint
Complaint of Discrimination Form

(2)    Documents Received and Reviewed [Attached as Exhibits]

(a)    Equal Employment Opportunity Initial Complainant Contact/Interview Worksheet dated January 25, 2001.
(b)    Training staff assignments from May 1, 2000 through February 2, 2001.
(c)    Official roster for testing instructors from April 6, 2000 through February 26, 2001.
(d)    Memorandum from Rahim A. Muhammad to GSA Office of Equal

Page 14 of 16

Opportunity dated January 3, 2001 and January 24, 2001.

(e)    Handwritten notes of Mr. Muhammad from January 9, 2001 meeting with Chief Erickson.

(f)    Form DD 283 related to the ordering of class materials.

(g)    List of positions/jobs desired by Mr. Muhammad in requested reassignment.

(h)    Emails to and from Mr. Muhammad from April 19, 2000 to January 23, 2001.

(i)    Notice of Rights and Responsibilities dated February 20, 2001.

(j)    Position Description for Training Instructor, GS-1712-11 dated July 7, 1995.

(k)    Notice of Right to File a Discrimination Complaint/Notice of Final Interview dated March 6, 2001.

## H.    SUMMARY OF INFORMAL RESOLUTION ATTEMPT

Requested Remedies:

03/06/01    Met with Mr. Muhammad to discuss attempts at resolution. Discussion included the fact that Chief Erickson and Boyd stated that they did not have the authority to reassign him. In addition, Mr. Muhammad was informed that Chief Boyd also stated that his recommendation to the Director, Andre Jordan, would be that he not be reassigned and that if he felt that he had been discriminated against he should proceed with his complaint.

Mr. Muhammad indicated that he intends to pursue his complaint.

## I.    SUMMARY OF INFORMATION GIVEN TO AGGRIEVED PERSON BY COUNSELOR

1.    Agreement to Postpone the Final Interview and Extend the Counseling Period

2.    Notice of Rights and Responsibilities

3.    Designation of Representative

4.    Notice of Right to File a Discrimination Complaint

5.    Complaint of Discrimination Form, and

6.    Notice of Final Interview.

*Saundra G. Davis*

Saundra G. Davis
EEO Counselor

*March 7, 2001*

Date

(703) 684-7619

Telephone Number

101 N. Columbus Street, Suite 301
Alexandria, Virginia 22314

Office Address

January 3, 2001

MEMORANDUM FOR    GENERAL SERVICES ADMINISTRATION
                              OFFICE OF EQUAL OPPORTUNITY AND TREATMENT

FROM:                         RAHIM A. MUHAMMAD, INSTRUCTOR
                              FEDERAL PROTECTIVE SERVICE
                              TRAINING SECTION- WPSOT

SUBJECT:                      Complaint notice of disparaging treatment and
                              Racial, and Religious indifference statements


The attached statements are supported by fellow workers who are willing to make oral, as submit written statements to EEO Officials on inquiries as to the facts of the allegations which I submit  referencing treatment I have received for the past 8 or more months from my supervisor, Leslyn Erickson.

May 2000  -  I returned to my work center after having been out due to a traumatic duty related injury, an upon my entering my office I noticed boxes had been stacked completely blocking my seat.  A note was stuck to the glass window of my office for all to see which stated, "I guess you wil have to have a bake sale to pay for this".  These embarrassing antic's were directed by Leslyn Erickson my supervisor, who Directed my coworkers, Instructor's (Carlton Tucker and Vicki Witherspoon) to place the boxes in my office.


May 2000 – I was tasked to design, and conduct classes in Crowd Control by the Law Enforcement assistant Chief. Instructor tucker, who is Black, assisted me in the developing and preparation for the class. Chief Leslyn Erickson in a staff meeting that afternoon in front of the staff, stated Instructor Harold Miller who is white, would be the Manager of the program which Tucker and I had developed.  I disagreed with Chief Erickson openly in the meetings as Instructor Miller was a junior Instructor, and had not worked on the program at all.  Chief Erickson stated that that was her decision and it was final.


September 21, 2000  -  At 1530 Hours Chief Erickson asked me to come to her office. She stated to me that she needed to reiterate the leave policy on to me about when an Instructor was late.
1.  She then accused me of being late without notifying anyone, or supervisor.

2. She did not know when or who I talked to when I was late and why.
3. She stated that no one in my section knew I was going to be late.
4. When I gave Chief Erickson the facts of the matter , which proved her as not being factual, she then stated to me that "the conversation is over, Drop It!".
5. Linda Muhammad, Chief Erickson's receptionist at the time I called in and talked to her, stated, that Chief Erickson did not talk to her about this issue. This resulted in the Chief's statement to me as being false.
6. Linda Muhammad stated to me that for 6 or 7 months, Chief Erickson audited my attendance continuously.
7. Chief Erickson once called my home and asked my daughter when was I returning to work, although I was out on traumatic Leave.
8. Chief Erickson had Linda Muhammad, the acting receptionist call me by page prior to my taking a flight going on vacation because she could not fin my leave form which she approved two (2) months prior and had been already submitted.
9. Chief Erickson allowed Instructor Miller to proceed on leave without completing and incident report which he was involved in, but instead, came to me the day after his departure and asked me to complete his paperwork for him.

December 19,2000 - At 0920 Hours, Chief Erickson came to my Office and asked me to go to ROB for the Christmas Ceremony and a special presentation for Instructor Miller. I informed her that I would rather decline because I did not celebrate Christmas as a religious preference.
Chief Erickson stated, "I do not understand, if it was Ramadan (my religious Holiday), they would attend for me! Chief Erickson then walked out of my office and in the hallway yelled, "now you're getting religious!" I was personally insulted, as offended my Chief Erickson's behavior regarding my religious preference. As a Muslim, my Holiday was in season at that time of her remarks.

At 0935 - Chief Erickson returned to my office a informed me that I would conduct contract guard testing in place of Instructor Jefferson whom was scheduled, as she directed him to attend the Christmas Ceremonies. Chief Erickson in this case I feel persecuted me because of my faith, as other Instructors were available to conduct the testing which I had conducted the day prior as the attached schedules reflect.

January 2, 2001 - At 1100 Hours I was Informed By Chief Erickson that she was hold a cursory meeting with me regarding my time and attendance as she had with all of my coworkers, (except Instructor Miller) as He stated to me that she did not hold a meeting with him. She stated to me that I was not the only one she had audited because of the number of Monday's and Friday's I had taken off in the year 2000. I informed her that In the medical program which I have appointments, as the nature of my injury, I had informed her before regarding my use of sick leave for my illness. She stated that she would take some action if I continued to take sick leave on Friday's or Monday's.

January 2, 2001 - At 1130 Hours, after the meeting with Chief Erickson, I was approached by Instructor Carlton Tucker who informed me that "Chief's Erickson had directed him to place me on the duty schedule on Friday's and Monday's, with contract

guard duties, which If I did not come to work at those time, would cause a disruption in the schedule and effect the other Instructor's as they would have to be rescheduled in their duties, and further, If I was at work on those days, it would result in being in me being tasked with an additional workload weekly, greater as compared to the other Instructors on the staff.

This treatment has caused a volatile atmosphere, as a depressing work environment for me with my peers, as I have bee singled out, move to an empty office away from the other Instructors on the staff.  I have requested that I be reassigned to the law Enforcement Division in a comparable position out of the training section, as my integrity, and ability as a Law Enforcement Instructor has been tainted by the maltreatment I have received from Chief Erickson.



GSA National Capital Region

April 11, 2001

Richard H. Semsker
Attorney-at-Law
1120 G Street, NW.
Washington, DC 20005

Ref:  GSA Case Number 01-NCR-WP-RAM-19

Dear Mr. Muhammad:

On March 6, 2001, I sent Mr. Muhammad a letter acknowledging
receipt of his formal Equal Employment Opportunity (EEO)
discrimination complaint which was dated, hand delivered, and
deemed filed on March 6, 2001.  I also informed him that him
complaint was under review for acceptance or dismissal.  On March
20, 2001, Mr. Muhammad designated you as his representative in
the above referenced complaint.

This notice is to provide you with the current status of this EEO
complaint.  Based on a review of the formal complaint and the
EEO Counselor's Report, it has been determined that the following
claim(s) will be **Accepted** for formal investigation.  A copy of
the counselor's report is enclosed.

Mr. Muhammad's claim that because of his race (Black African
American), and religion (Muslim), he was discriminated against
when he received disparate treatment on a continuous basis from
May 2000 through January 24, 2001, which resulted in a hostile
work environment.  Specifically, he alleged the following eleven
incidents contributed to a hostile working environment.

    1.  In May 2000, Mr. Muhammed's supervisor, Leslyn
       Erickson, directed that boxes be stacked completely
       blocking his seat with a note stating, "I guess you
       will have to have a bake sale to pay for this."

    2.  In May 2000, Chief Erickson stated in a staff meeting
       that Instructor Harold Miller would be the Manager of
       a program that Mr. Muhammad and Instructor Tucker
       developed and prepared.

-2-

3.  On September 21, 2000, Chief Erickson accused Mr.
    Muhammad of being late without notifying a supervisor
    or anyone.

4.  On September 21, 2000, Mr. Muhammad found out that
    Chief Erickson had been auditing his attendance
    continuously for the past six or seven months, and
    that Chief Erickson had called his home and asked his
    daughter when he was returning to work, although he were
    out on traumatic leave.

5.  Chief Erickson had the acting receptionist, Linda
    Muhammad, call him by page prior to taking a flight
    to go on vacation because she could not find his leave
    form which she approved two months prior.

6.  Chief Erickson allowed Instructor Miller to proceed
    on leave without completing an incident report, but
    instead, came to Mr. Muhammad the day after Mr. Miller's
    departure and asked Mr. Muhammad to complete his
    paperwork for him.

7.  On December 19, 2000, Chief Erickson personally
    insulted and offended Mr. Muhammad with comments
    regarding his religion.  When he did not wish to attend
    a Christmas celebration due to religious reasons, he
    was then instructed to conduct Contract Guard testing
    in place of Instructor Jefferson.

8.  On January 2, 2001, Mr. Muhammad was informed by Chief
    Erickson that she would take action against him if he
    continued to take sick leave on Mondays and Fridays.
    Later that day, he was informed by Instructor Tucker
    that Chief Erickson had directed him to place him on
    duty schedule on Fridays and Mondays with contract
    guard duty.  This was done after he informed her that
    the medical program he belonged to set his appointments
    on Mondays and Fridays based on the nature of his
    injury.

9.  On January 9, 2001, Mr. Muhammad was moved to a new
    office away from the other instructors and Chief
    Erickson attempted to take his duties as Assistant
    In-service Program Manager away from him.

-3-

    10. On January 24, 2001, after Chief Erickson called
        Mr. Muhammad to her office and replaced him as the
        supporting instructor for the PDT Program.

    11. On January 24, 2001, Mr. Muhammad requested, and was
        denied a request to be reassigned from under her
        authority.

If you believe the claim(s) in your client's complaint have not
been correctly identified, please notify me, in writing, within
five calendar days after your receipt of this letter, specifying
why you believe that the claim(s) have not been correctly
identified.

If no response is received from you, the accepted claims will be
forwarded for formal investigation upon the expiration of the
above stated five days.

Pursuant to 29 CFR Part 1614, the agency has 180 calendar days
to complete the investigation (from the date of filing a formal
complaint) or to issue the Notice of Final Action on the
complaint.

If you have any questions, please call me on (202)708-8588.

Sincerely,

Avis B. Johnson
EEO Officer

Enclosure

cc: Rahim Muhammad, Complainant (w/o Enclosure)
    Sharon Roach, Regional Counsel (WL)
    Andre Jordan, Director, FPS (WPS)

April 24, 2001

MEMORANDUM

FROM:        Rahim A. Muhammad
             Instructor, FPS Training Academy

SUBJECT:     Resolution of EEO Complaint GSA Case Numbers ( 01-NCR-WP-RAM-19 )

FOR:         Avis B. Johnson
             EEO Officer

CC:          Sharon Roach, Regional Counsel (WL)
             James M. Taylor ( AK)
             Andrew Jordan, Director, (WPS)
             Earl M. Boyd, Chief Law Enforcement (WPS)

This notice is my formal request to cancel my EEO Complaint of discrimination on January 24, 2001.

I met with Leslyn D. Erickson, Chief of the FPS Training Academy and person named in the complaint on 24 April 2001. The meeting resulted in the resolution of the issues which resulted in the complaint being filed. The issues were resolved to the satisfaction and agreement of Chief Erickson, and myself. I am pleased with the professionalism of the EEO staff in attending to the initial preparation of my complaint. I am thankful that in the course of the complaint, the opportunity presented itself for the discussion of differences, and misunderstandings which were resolved through open communications in the meeting between Chief Erickson and myself.

Again, I respectfully withdraw the request for investigation of the EEO Complaint GSA Case Numbers ( 01-NCR-WP-RAM-19 ).

Sincerely,

Rahim A. Muhammad
Instructor, FPS Training Academy