# EEO COUNSELOR'S REPORT

## U.S. GENERAL SERVICES ADMINISTRATION
## NATIONAL CAPITAL REGION

### RAHIM A. MUHAMMAD

### INFORMAL COMPLAINT

### GSANCR20030039

### PREPARED BY

### *F&W ASSOCIATES*

RECEIVED
2003 OCT 15 A 10: 35
GSA-NCR EEO OFFICE

*F&W Associates*

**U.S. GENERAL SERVICES ADMINISTRATION**
**National Capitol Region**
**301 7th Street, SW, Regional Office Building**
**Washington, DC 20407-0001**

**EEO COUNSELOR'S REPORT**
29 C.F.R. SECTION 1614.105(c)

**A. AGGRIEVED PERSON:**

Name: Rahim A. Muhammad          Social Security Number: _____

Job Title/Series/Grade:   Physical Security Specialist, GS-0080-12

Place of Employment:   Department of Homeland Security
                       Federal Protective Services (FPS), Training Division
                       3rd and M Street, SE, Washington, DC 20407

Work Phone No: (202)-619-9337          Home Phone No: (301) 868-3406

Home Address:   9301 Gwynndale Court
                Clinton, MD 20735

**B. CHRONOLOGY OF EEO COUNSELING:**

| | |
|---|---|
| Date of Initial Contact with EEO Office: | September 11, 2003 |
| Date of Initial Contact with EEO Counselor: | September 16, 2003 |
| Date of Initial Interview with EEO Counselor: | September 22, 2003 |
| Date of Alleged Discriminatory Events: | September 11, 2003 |
| | September 9, 2003 |
| | September 8, 2003 |
| | August 5, 2003 |
| | July 15, 2003 |
| | May 12, 2003 |
| 45th Calendar Day After Event: | October 26, 2003 |
| Date of Final Interview: | October 7, 2003 |
| Date of Notice of Right to File a Formal Discrimination Complaint: | October 7, 2003 |

Date Counseling Report Requested:  October 15, 2003

Date Counseling Report Submitted:  ▓▓▓▓▓▓▓▓

C. BASIS(ES) FOR ALLEGED DISCRIMINATION:

1) [x] ~~Race (Black)~~
2) [ ] Color (Specify)
3) [ ] National Origin (Specify)
4) [ ] Sex (Specify)
5) [ ] Age (Date of Birth)
6) [ ] Mental Disability (Specify)
7) [ ] Physical Disability (Specify)
8) [ ] Religion (Specify)
9) [x] ~~Reprisal~~ (Prior EEO activity. Mr. Muhammad's prior complaint was mediated through ADR, and resulted in a settlement in November 2001. Mr. Muhammad claimed that this EEO activity made him a target for negative treatment and distrust by management, and asserted that this attitude is now perpetuated by Mr. Dean Hunter).

D. ALLEGATIONS OF DISCRIMINATION:

Mr. Muhammad claimed a pattern of discrimination against him because of his race (black) and reprisal for prior EEO activity. He identified Federal Protective Services (FPS) Director, Mr. Dean Hunter (White), as the person responsible for perpetuating this attitude toward him, and for causing or influencing six specific instances of disparate treatment against him. These are as follows:

1.) On September 11, 2003, he was denied the opportunity to perform the duty of Acting Chief for the Training Division. A white male, who ranked lower than Mr. Muhammad, was named as Acting Chief instead.
2.) On September 9, 2003, he spoke with Mr. Hunter concerning an allegation that Mr. Hunter had invited white male subordinates to his home for a barbeque. Mr. Muhammad stated that he had been told by numerous individuals that blacks were disparaged at the barbeque, and that racial comments concerning FPS racial make-up were made. Mr. Muhammad was not satisfied with Mr. Hunter's response, which was that he had never had such a barbeque at his home.
3.) On September 8, 2003, Mr. Muhammad learned he was not selected for the position of Area Security Manager. He was told by Mr. Hunter that he missed the selection cut-off by one point. Mr. Muhammad believed Mr. Hunter was motivated by racially discriminatory reasons and reprisal, and intentionally scored Mr. Muhammad lower. Of the nine individuals who were selected, Mr. Muhammad claimed that seven had previously received training from Mr. Muhammad.
4.) On August 5, 2003, Mr. Muhammad was not permitted to transfer into his new

2

position of Physical Security Specialist, a promotion that had been approved on July 27, 2003. He believed Mr. Hunter, for racially discriminatory reasons and reprisal, influenced this denial of transfer.

5.) On July 15, 2003, he learned he was not selected for another position, also titled, "Physical Security Specialist." He was told by Human Resources that he was the only person on the referral list, but that Mr. Hunter had returned the referral list to Human Resources. Mr. Muhammad maintained that Mr. Hunter then hired a white male for the position, and instead of hiring him at the GS-12 level as was announced, the white male was hired at the GS-13 level.

6.) On May 12, 2003, Mr. Muhammad was denied the grade of GS-12 in his new position. He was later given the GS-12 grade, but believed Mr. Hunter, motivated by racially discriminatory reasons and reprisal, was responsible for the initial denial.

E. **REMEDY REQUESTED:**

Mr. Muhammad requests a re-examination of the scoring used in selecting the Area Security Manager positions. Specifically, he wants to discover if the scores made by Mr. Waldon and Mr. Constable, two of the three selecting officials, were used, or if their scores were overridden by Mr. Hunter, who was also one of the selecting officials. If it is found that Mr. Hunter manipulated the scores so that Mr. Muhammad would miss the cut-off, Mr. Muhammad requests to be retroactively selected for Area Manager.

Mr. Muhammad also requests that Mr. Hunter be appropriately disciplined for racial comments made during a barbeque at his home, to which he allegedly invited white male subordinates.

Other remedies for damages are requested, as deemed appropriate.

F. **THE EEO COUNSELOR ADVISED THE AGGRIEVED PERSON IN WRITING OF THE RIGHTS AND RESPONSIBILITIES CONTAINED IN THE EEO COUNSELOR'S CHECKLIST.**

The aggrieved acknowledged receiving the following documents at the initial counseling session:

1. Notice of Rights and Responsibilities
2. Cooperation with Equal Employment Opportunity Counselors & Investigators
3. Matter Raised at Counseling
4. Election between the Negotiated Grievances and the EEO Complaint Procedures
5. Confidentiality Statement
6. Processing of Mixed Cases Complaints and Appeals

7. Compensatory Damages
8. Equal Pay Act
9. Mailing Address
10. Back Pay
11. Designation of Representative
12. EEO Complaint Timeframes
13. Age Discrimination Complaints
14. Agreement to Mediate

G. **SUMMARY OF COUNSELOR'S INQUIRY:**

1. **Personal Contacts:**

   <u>Rahim A. Muhammad:</u> On September 22, 2003, the counselor met with Mr. Muhammad at his place of work at Department of Homeland Security, Federal Protective Services, Training Division, 3rd and M Streets, SE, Washington, DC. Mr. Muhammad, a black male, is a Physical Security Specialist, GS-0080-12. All allegations made by Mr. Muhammad concerning the Responsible Management Official (RMO), Dean Hunter, were discussed.

   <u>Dean Hunter:</u> On September 23, 2003, the counselor spoke the RMO, Mr. Hunter. A white male. Mr. Hunter is Deputy Director at Federal Protective Services. Mr. Hunter commented on all allegations and offered some areas for working with Mr. Muhammad.

   <u>Rahim A. Muhammad:</u> On September 24, 2003, the counselor spoke with Mr. Muhammad, reviewing the allegations and Mr. Hunter's responses to them.

   <u>Rahim A. Muhammad:</u> On October 7, 2003, the counselor met with Mr. Muhammad for the final interview. Mr. Muhammad and the counselor verified the accuracy of the allegations that were the subject of counseling and reviewed Mr. Hunter's responses and his offers to work with Mr. Muhammad in some areas.

   Following is a summary of the counselor's inquiry, arranged by first stating Mr. Muhammad's allegations, and the details surrounding them, and then stating Mr. Hunter's responses. Follow-up from Mr. Muhammad is then added, if given.

**1st Allegation from Mr. Muhammad:**

September 11, 2003: Mr. Muhammad was denied the opportunity to perform the duty of Acting Chief for the Training Division during the absence of then Training Chief, Anthony Surbeck (white male). Instead of naming Mr. Muhammad, Mr. Hunter named Mr. Harold Miller, a white male, as Acting Chief. An organizational chart was distributed to staff, which showed Mr. Miller as "Training Section Chief," and below him, seven individuals were named. One of

4

these individuals was Rahim Muhammad. Mr. Muhammad said that both the naming of Mr. Miller as Acting Chief, as well as the distribution of the organizational chart were an embarrassment to him, because he is a GS-12, and Mr. Miller is a GS-11. Furthermore, Mr. M. stated that even after the temporary appointment of Mr. Miller was withdrawn, another organizational chart was distributed a few days later, again showing Mr. Miller in the Acting Chief position, with the same seven individuals below him.

Mr. Hunter's Response to 1st Allegation:

Mr. Hunter stated that it is true that Mr. Harold Miller was named Training Section Acting Chief for a short period of time -- three hours -- on September 11, 2003. Mr. Hunter stated that after he was made aware that under this arrangement, Mr. Muhammad, a GS-12, was effectively reporting to Mr. Miller, a GS-11, he rethought the decision. In rethinking it, he decided that since the Training Section Chief was actually a GS-13 position, he would appoint Elliot Grollman (white male), who already was a GS-13, to that post and made this change the next morning, on September 12, 2003.

As to the organizational charts that Mr. Muhammad referred to, Mr. Hunter was not aware that another chart was e-mailed to staff, again showing Mr. Miller as Acting Chief, when in fact Mr. Grollman had been appointed to that position.

Mr. Hunter stated that now Mr. Grollman is Acting Chief, and if he is absent from the office, he can choose the person he regards as best suited to fill in when he is gone. Mr. Hunter stated that with different situations, such as time out of the office, or varying circumstances while he is out, Mr. Grollman may decide to choose a given individual on one occasion, and perhaps another individual on another occasion.

Mr. Muhammad's Follow-Up:

Mr. Muhammad stated that Mr. Hunter intentionally named Elliot Grollman to Training Section Chief so he would not have to accept that Mr. Muhammad, the GS-12, would be Acting Chief in the absence of a GS-13.

Mr. Muhammad said that Mr. Hunter's excuse that he did not know about the second organizational chart is showing a pattern where Mr. Hunter simply says, "I didn't know," or, "It was a mistake."

Mr. Muhammad stated that in other areas of the department there are clear policies set up as to who would be in charge in case someone is out or otherwise not performing their job. Mr. Grollman should be consistent with that, and appoint someone as "Acting," if he is gone. This should be one person, the next in command, not just someone Mr. Grollman chooses at a given moment. Mr. Muhammad stated that this person should be him, and it is only because Mr.

5

Hunter is discriminating against him that he has not been named as "Acting Chief."

## 2nd Allegation from Mr. Muhammad:

September 9, 2003, Mr. Muhammad stated that he made management (Joseph Trindal, white male, Director of FPS, aware that during the past eight to nine months, he has been hearing from numerous co-workers that Mr. Hunter had a barbeque at his home, to which he invited white male subordinates. Mr. Muhammad said that he had been told that racially prejudiced remarks were made there. Furthermore, Mr. Muhammad was told that a general consensus was reached by those attending the barbeque that since there were more blacks employed at FPS, it was time for this disparity to be reduced by hiring more whites in the department. Mr. Muhammad felt that this event and the conversation there led to a hiring system that has discriminated against blacks.
According to Mr. Muhammad, Mr. Trindal told him to take the matter directly to Mr. Hunter. When Mr. Muhammad did so that same day, he was not satisfied with Mr. Hunter's response, which was that there had not been such a barbeque at his home.

## Mr. Hunter's Response to 2nd Allegation:

Mr. Hunter's response to the allegation was that there never was a barbeque at his home for white male subordinates. He stated that only two persons from his place of work have ever been to his home, both black males. One of these individuals was Patrick Moses, who was traveling in the area without his family, and so Mr. Hunter said he invited him to his Annapolis home. The second individual was Earl Donnette, who, along with a larger team that included Mr. Hunter, was working near Annapolis. Mr. Hunter said he invited the racially mixed group to his home.

## 3rd Allegation from Mr. Muhammad:

September 8, 2003, Mr. Muhammad learned that he was not selected for Area Security Manager, GS-0080-12, under announcement number 03992251. Mr. Muhammad stated that, after finding out he was not selected and missed the cutoff by one point, he told Mr. Hunter that he had trained seven of the persons who were selected, is more experienced, qualified, and is senior to those selected, and questioned the selection process.

Mr. Muhammad also asserted that he was told by Mr. Hunter that if there had been one more opening, he would have been selected. Mr. Muhammad stated that in fact there *was* one more opening, because another individual was hired, a white male, at the GS-13 level, when the job was advertised as a GS-12 level.

6

Mr. Hunter's Response to 3rd Allegation:

Mr. Hunter responded by explaining the process used for the selection, and how candidates were scored. Mr. Hunter stated that of the nine persons hired, two were black males, and two were black females. Twenty-one applicants competed for the positions, and the scoring range for the applicants was 44 points to 68 points. The persons hired had scores ranging from 57 to 68. Three raters scored the applicants: one black male, Mr. Don Waldon, and two white males, one of whom was Mr. Hunter, and the other was Mr. Paul Constable. According to Mr. Hunter, Mr. Waldon, black male, gave the lower of the three scores, a 17, to Mr. Muhammad. Mr. Constable and Mr. Hunter gave Mr. Muhammad scores of 21 and 18, respectively. The three scores were added together, giving the total score of 56.

Mr. Hunter identified two areas where Mr. Muhammad scored lower: physical security experience, and law enforcement supervisory experience. He stated that he discussed these two areas with Mr. Muhammad, and believes that in the job in which Mr. M. currently works, Mr. M. will be able to gain additional training and experience that will aid him in competing for openings in the future. Mr. Hunter stated that he would try to put Mr. Muhammad in Enforcement Training at the first available vacancy.

As for Mr. Muhammad's assertion that he had trained seven of the persons selected for Area Commander, and was therefore more qualified, Mr. Hunter maintained that Mr. Muhammad trained those individuals on only some areas, including firearms and CPR, but not in all areas, and specifically not in physical security. Mr. Hunter stated that Mr. Muhammad is not yet ready for Area Commander, but in the future, with more training and experience, could be more competitive. Mr. Hunter stated that Mr. Muhammad performed extremely well when competing for the job for which he *was* selected. He was well prepared, and answered all questions thoroughly. Mr. Hunter said this same type of success could reasonably occur if Mr. a competed in the future for Area Commander, given that by then he will have more experience in physical security and law enforcement supervision.

Mr. Hunter denied that a tenth individual was hired, as Mr. Muhammad asserted.

4th Allegation from Mr. Muhammad:

August 5, 2003: Mr. Muhammad alleged that he was refused the transfer into his competitive selected position of Physical Security Specialist (LESO), GS-0080-12, under announcement number 03991601, which was effective July 27, 2003. Mr. Muhammad believed that Mr. Hunter influenced management to refuse the transfer. Mr. Muhammad stated that management said they wanted him to stay in the Training Division, where there was a shortage of personnel and expertise, instead of transferring.

Furthermore, Mr. Muhammad believed that when his promotion was referenced on Standard Form (SF) 50, that Mr. Hunter had his own name put on the SF-50 as his immediate supervisor. Mr. Muhammad stated that no other individuals selected for Physical Security Specialist had Mr. Hunter designated as their supervisor on their SF 50's, and that he was singled out by Mr. Hunter.

Mr. Hunter's Response to 4th Allegation:

Responding to these allegations, Mr. Hunter. stated that all those persons who were selected for Physical Security Specialist along with Mr. Muhammad were asked the same thing – to remain in their current positions as Trainers, since a shortage existed there. He maintained, however, that he told Mr. Muhammad that if he does want to transfer, Mr. Hunter would allow him to do so immediately. He could not guarantee the geographic area of the transfer – that would depend on need –, but said that he would immediately approve the transfer. According to Mr. Hunter, Mr. a no longer wants to transfer.

Mr. Hunter stated that he does not know why his name appeared on the SF-50 as Mr. Muhammad's immediate supervisor. He believes this error is already being corrected, but if it has not, he will make sure it is corrected in the Human Resources Division. He stated that is not Mr. Muhammad's immediate supervisor.

Mr. Muhammad's Follow-Up:

Mr. Muhammad stated that he is no longer seeking the transfer, as he believes it is better to stay in Training if it is for the good of the department. He stated that the initial denial, however, does show the pattern used by Mr. Hunter to single him out. As for the SF-50, Mr. Hunter's name now has been removed, but Mr. Muhammad believes that it could only have appeared there in the first place if Mr. Hunter's directed Human Resources to put it there. Mr. Muhammad stated that this is another example of Mr. Hunter's claiming something is a mistake or that he "didn't know," when it was actually intentional.

5th Accusation from Mr. Muhammad.:

July 15, 2003: Mr. Muhammad stated that he was non-selected for a Physical Security Specialist position, GS-0080-12, under announcement number 03992110. (In the "Statement of Discrimination", that Mr. Muhammad submitted with his initial complaint, he stated that the job announcement was 03992210, however, the backup material submitted with his statement shows the announcement as 03992110). He was advised by Paul Constable, Human Resources Director for Eastern Division, that he was the only candidate on the referral, but that Mr. Hunter returned the referral to the Human Resources Division. Mr. Muhammad asserts that Mr. Hunter then instead hired a white male at the GS-13 level, when the position was announced at the GS-12 level.

8

Mr. Hunter's Response to 5th Allegation:

Mr. Hunter stated that this position Mr. Muhammad refers to may have been a duplicate announcement for the same Physical Security Specialist position that Mr. Muhammad was indeed hired for. Mr. Hunter maintained that some positions are announced both internally and externally, with different announcement numbers. He stated that it is possible that the Mr. Muhammad's name appeared as "non-selected" for the opening, if it was the case that the opening was announced as a duplicate of the position for which Mr. Muhammad was hired. (Note that at the time of the telephone interview, Mr. Hunter did not have a copy of the announcement with him.)

Mr. Muhammad's Follow-Up:

Mr. Muhammad stated that again, this is an example of Mr. H. pleading innocent when what he did was actually intentional, and was discriminating against Mr. Muhammad.

6th Allegation from Mr. Muhammad:

May 12, 2003: Mr. Muhammad asserted that when he was hired for the Physical Security Specialist under announcement 03991601, he was initially given a GS-11 grade instead of the GS-12 grade he was entitled to. Mr Muhammad believes that Mr. Hunter intentionally approved the GS-11 grade, knowing that it should have been a GS-12.

Mr. H.'s Response to 6th Allegation:

Mr. Hunter responded that his policy has always been to give the higher GS grade to which a person is entitled. He believes that the initial GS-11 was accidental, and when Mr. Muhammad brought the issue up, the GS grade was changed to GS-12.

7th Allegation from Mr. Muhammad: (Note that Mr. Muhammad does not now want this allegation to be investigated, but wants the allegation and Mr. Hunter's response to be included in the Counselor's Report, since it was discussed.)

On or about February 14, 2003: Mr. Muhammad stated that he was removed from the Law Enforcement Bureau after being approved on or about January 25, 2003 by Patrick Moses (black male) and Commissioner Wendell Shingler (white male) to the rank of lieutenant with the Law Enforcement Bureau. Mr. also stated he had a pending FTO program he was working on, but Mr. Hunter advised Anthony Surbeck to remove Mr. Muhammad from the FTO project.

9

<u>Mr. Hunter's Response to 7th Allegation:</u>

Mr. Hunter stated that when Mr. Muhammad returned to the Training Division after being placed temporarily in Law Enforcement, Mr. Muhammad pushed for keeping the rank of lieutenant that he had been appointed to in Law Enforcement. According to Mr. Hunter, the trouble with assuming this rank when he came back to the Training Division was that this would have let him skip over the ranks of corporal and sergeant, at a time when others in the Training Division were being required to reach the rank of lieutenant only after moving up the ranks. Mr. Hunter said he explained this problem to Mr. Shingler, who told Mr. Hunter that after hearing of the difficulty, he fully supported Mr. Hunter's decision not to move Mr. Muhammad back into the Training Division with the rank of lieutenant.

As for the issue of removing Mr. Muhammad from the FTO program, Mr. Hunter said he did so because Mr. Muhammad was doing things in the FTO program for which he did not have authority. Mr. Muhammad had been tasked with curriculum development, policy, and procedure, but expanded those duties and began calling meetings, telling people they had to report to the meetings. As a result, Mr. Hunter said he removed Mr. M. from the FTO program.

2. **Exhibits Attached to File:**

    TAB A: Notice of Right to File EEO Complaint and Documents Provided the Aggrieved.

    TAB B: Documents Provided the EEO Counselor by the Agency.

    TAB C: Documents Provided the EEO Counselor by the Counselee.

H. **SUMMARY OF INFORMAL SETTLEMENT ATTEMPTS**

The counselor discussed the remedies initially sought by the complainant with Mr. Hunter, Deputy Regional Director.

Although the parties agreed that Mr. Muhammad did not wish to transfer to the Physical Security and Mr. Muhammad agreed to drop the allegation that he was entitled to the rank of lieutenant, resolution could not be achieved on the other issues and Mr. Muhammad indicated he wished to file a formal complaint.

I. **SUMMARY OF INFORMATION GIVEN AGGRIEVED PERSON BY COUNSELOR.**

1. Notice of Rights and Responsibilities
2. Cooperation with Equal Employment Opportunity Counselors & Investigators

3. Matter Raised at Counseling
4. Election between the Negotiated Grievances and the EEO Complaint Procedures
5. Confidentiality Statement
6. Processing of Mixed Cases Complaints and Appeals
7. Compensatory Damages
8. Equal Pay Act
9. Mailing Address
10. Back Pay
11. Designation of Representative
12. EEO Complaint Timeframes
13. Age Discrimination Complaints
14. Agreement to Mediate
15. Extension of EEO Counseling
16. Notice of Final Interview/Notice of Right to File a Discrimination Complaint

Angela M. Noyes                                           301-537-6742
**Print – Name of EEO Counselor**                         **Telephone Number**

*Angela M. Noyes*                                         October 14, 2003
**Signature – EEO Counselor**                             **Date**


F&W ASSOCAIATES   717 S.BARTON STREET, ARLINGTON, VA

**Office Name and Address**

11

DATE: Oct 7, 2003

MEMORANDUM FOR: Rahim A. Muhammad

SUBJECT: Notice of Final Interview/ Notice of Right to File a Discrimination Complaint

This is to inform you that on the above date, the final counseling interview was held on the matter you presented to me as an EEO Counselor. You initially contacted the EEO Office on September 11, 2003, and alleged that you were discriminated against because of your race (Black), and reprisal for prior EEO activity, citing the following: disparate treatment by not being assigned the duty of Acting Chief; by being a member of the race (Black) that was disparaged at a barbeque at the home of the manager, to which white male subordinates of the manager were invited; by not being selected for the position of Area Security Manager; by not being initially allowed to transfer into your competitive selected position of Physical Security Specialist; by not being selected for an opening for which you were the only candidate on the referral; and by being initially denied the grade of GS-12 in your new position.

If you believe you have been discriminated against on the basis of race, color, religion, sex, age, national origin, disability (physical/mental) and/or reprisal (for participation in a protected EEO activity or opposing an unlawful employment practice under the anti-discrimination laws), you have a right to file a complaint of discrimination with **15 calendar days** after the receipt of this notice.

This complaint must be in writing, preferably on a GSA Form 3467, which is attached for your use. Your complaint must be filed in person or by mail with the original complaint form going to:

Regional EEO Director (WAD-E)
General Services Administration
7th and D Streets, SW, ROB/7002
Washington, DC 20407

The formal complaint must specify the issue(s) which form the basis for the complaint and the matter(s) giving rise to the complaint which were discussed with the EEO Counselor. If you add issues on which you have not been counseled, the formal complaint may be returned for further counseling.

U.S. General Services Administration
301 7th Street, S.W.
Washington, DC 20407-0001
www.gsa.gov

Submit a clear description of discrimination (explain, briefly, how you believe you were discriminated against (that is, treated differently from other employees or applicants). If your complaint involves more than one allegation of discrimination: (1) list each allegation; (2) provide the date(s) of alleged discriminatory act(s); and (3) furnish specific factual information in support of each. Use additional blank sheets of paper, if necessary.

The complaint should also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same subject matter (include dates). This information is necessary for the agency to determine whether your complaint is appropriate for processing under 29 Code of Federal Regulations (CFR), Part 1614.

If your complaint involves an allegation of discrimination, which is also appealable to the MSPB, you may file a mixed case complaint with the agency or a mixed case appeal with the MSPB. Under current Federal regulations, you may not file both. You must select the forum in which you wish to pursue your case. Should you decide to file an appeal to the MSPB, please notify the Central Office EEO Officer at (202) 501-0767 within 15 days after receipt of this notice.

If you retain an attorney or any other person as a representative, you or your representative must immediately notify the EEO Officer, in writing. You and/or your representative will receive a written notice of receipt of your discrimination complaint from the appropriate agency official.

If you require further information regarding your rights or assistance in completing the GSA Form 3467, contact the Equal Employment Opportunity Office at (202) 708-8588.

Sincerely,

_____Angela Noyes_____   10-7-03
Angela Noyes              Date
Counselor, F&W Associates

Received by Complainant _____ (Signature)

Date: 10-7-2003

U.S. General Services Administration
301 7th Street, S.W.
Washington, DC 20407-0001
www.gsa.gov